J. D. ADAMS MANUFACTURING CO. *v.* STOREN, CHIEF ADMINISTRATIVE OFFICER, ET AL.

No. 641.   Argued March 30, 31, 1938.—Decided May 16, 1938.

*Messrs. Frederick E. Matson* and *Harry T. Ice* for appellant.

*Messrs. A. J. Stevenson,* First Assistant Attorney General, and *Joseph P. McNamara,* Deputy Attorney General, with whom *Messrs. Omer Stokes Jackson,* Attorney General, and *Joseph W. Hutchinson,* Deputy Attorney General, of Indiana, were on the brief, for appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

In this case we are called upon to determine whether the Indiana Gross Income Tax Act of 1933 [1] as construed and applied burdens interstate commerce and impairs the obligation of contract in contravention of Article I, §§ 8 and 10 of the Constitution of the United States.

Section 1 declares that the phrase "gross income" as used in the Act means, *inter alia,* gross receipts derived from trades, businesses, or commerce, and receipts from investment of capital, including interest. Section 2 imposes a tax ascertained by the application of specified rates to the gross income of every resident of the State and the gross income of every non-resident derived from sources within the State. Section 6 exempts "So much of such gross income as is derived from business conducted in commerce between this state and other states of the United States, or between this state and foreign countries, to the extent to which the State of Indiana is prohibited from taxing under the Constitution of the United States of America."

The appellant, an Indiana corporation, manufactures road machinery and equipment and maintains its home office, principal place of business, and factory in the State. It sells eighty per cent. of its products to customers

---

[1] Indiana Acts 1933, c. 50; Ind. Stat. Ann. (Burns) § 64–2601 ff.

in other States and foreign countries upon orders taken subject to approval at the home office. Shipments are made from the factory and payments are remitted to the home office. Pursuant to a practice of investing surplus funds not immediately required in its business, the appellant owns and receives interest upon bonds and notes of Indiana municipal corporations which, at the time they were issued, were declared by statute to be exempt from taxation.

Upon the adoption of the Act, the appellant filed a petition in a state circuit court in which, after reciting these facts, it alleged that the appellees were demanding that it report and pay taxes upon income received in interstate and foreign commerce and income received as interest upon securities exempted from taxation by the state law and that these demands, together with penalties specified in the statute for failure to make return and pay the tax, would be enforced unless prevented by the judgment of the court. The prayer was for a declaratory judgment that the Act, as construed and applied by the appellees, is unconstitutional. After issue joined the facts were stipulated and the court made findings and entered a judgment in favor of the appellant. The Supreme Court of Indiana reversed the judgment, holding that the tax demanded does not unconstitutionally burden the interstate commerce in which appellant is engaged and does not impair the obligation of any contract of the State exempting municipal securities from taxation.[2]

1. Will the threatened imposition of the tax on the gross income from the appellant's sales in interstate commerce contravene Article I, § 8 of the Constitution, which reposes in Congress power to regulate interstate and foreign commerce?

The title of the Act declares that it is a revenue measure imposing a tax upon "the receipt of gross income."

---

[2] 212 Ind. 343; 7 N. E. (2d) 941.

The statute defines gross income as meaning the gross receipts derived from trades, businesses, or commerce. The Supreme Court of Indiana in its opinion states: "The statute here under consideration levies a tax upon all who are domiciled within the state, based upon the privilege of domicile, and transacting business, and receiving gross income, within the state, and measured by the amount of gross income." [3]

The tax is not an excise for the privilege of domicile alone, since it is levied upon the gross income of nonresidents from sources within the State. Nor is it for the transaction of business, since in many instances it hits the receipt of income by one who conducts no business. It is not a charter fee or a franchise fee measured by the value of goods manufactured or the amount of sales, such as the State would be competent to demand from domestic or foreign corporations for the privilege conferred.[4] It is not an excise upon the privilege of producing or manufacturing within the State, measured by volume of production or the amount of sales.[5] It is not a tax in lieu of ad valorem taxes upon property, which would be inoffensive to the commerce clause,[6] since the appellant pays local and state taxes upon its property within the State and it appears that these, as respects appellant and others similarly situated, have not been reduced. The Act, moreover, is silent as to the tax being in lieu of property taxes. The opinion of the Supreme Court suggests that the

---

[3] Compare *Miles v. Department of Treasury*, 209 Ind. 172, 188; 199 N. E. 372, 379.

[4] Compare *Matson Navigation Co. v. State Board*, 297 U. S. 441, 444.

[5] Compare *American Mfg. Co. v. St. Louis*, 250 U. S. 459; *Oliver Iron Co. v. Lord*, 262 U. S. 172; *Hope Natural Gas Co. v. Hall*, 274 U. S. 284; *Utah Power & Light Co. v. Pfost*, 286 U. S. 165.

[6] Compare *Postal Telegraph Cable Co. v. Adams*, 155 U. S. 688; *United States Express Co. v. Minnesota*, 223 U. S. 335; *Pullman Co. v. Richardson*, 261 U. S. 330.

statute was adopted as part of a scheme for the reduction of local property taxes and the substitution of a gross income tax, but, as appellant points out, provision for reduction of property taxes was made by legislation passed in 1932.[7]

The regulations issued by the Department of the Treasury, pursuant to authority granted by the Act, treat the exaction as a gross receipts tax;[8] and the Attorney General says in his brief that it is a privilege tax upon the receipt of gross income. We think this a correct description.

We conclude that the tax is what it purports to be,— a tax upon gross receipts from commerce. Appellant's sales to customers in other States and abroad are interstate and foreign commerce. The Act, as construed, imposes a tax of one per cent. on every dollar received from these sales.

The vice of the statute as applied to receipts from interstate sales is that the tax includes in its measure, without apportionment, receipts derived from activities in interstate commerce; and that the exaction is of such a character that if lawful it may in substance be laid to the fullest extent by States in which the goods are sold as well as those in which they are manufactured. Interstate commerce would thus be subjected to the risk of a double tax burden to which intrastate commerce is not exposed, and which the commerce clause forbids.[9] We have repeatedly held that such a tax is a regulation of, and a burden upon, interstate commerce prohibited by Article I, § 8 of the

---

[7] Indiana Acts of 1932, c. 10, p. 17.

[8] Article 2 of the Regulations states "The gross income tax of 1933 is primarily and in effect a gross receipts tax . . ." Article 16 states that the "tax shall apply to and be levied and collected upon all gross income received . . ."

[9] See *Western Livestock* v. *Bureau of Revenue*, 303 U. S. 250.

Constitution.[10]  The opinion of the State Supreme Court
stresses the generality and nondiscriminatory character of
the exaction, but it is settled that this will not save the
tax if it directly burdens interstate commerce.[11]

  The state court and the appellees rely strongly upon
*American Mfg. Co.* v. *St. Louis,* 250 U. S. 459, as sup-
porting the tax on appellant's total gross receipts derived
from commerce with citizens of the State and those of
other States or foreign countries.  But that case dealt
with a municipal license fee for pursuing the occupation
of a manufacturer in St. Louis.  The exaction was not
an excise laid upon the taxpayer's sales or upon the in-
come derived from sales.  The tax on the privilege for
the ensuing year was measured by a percentage of the
past year's sales.[12]  The taxpayer had during the preced-
ing year removed some of the goods manufactured to a
warehouse in another State and, upon sale, delivered
them from the warehouse.  It contended that the city
was without power to include these sales in the measure
of the tax for the coming year.  The court held, however,
that the tax was upon the privilege of manufacturing

---

: [10] *Cook* v. *Pennsylvania,* 97 U. S. 566; *Fargo* v. *Michigan,* 121
U. S. 230; *Philadelphia & Southern S. S. Co.* v. *Pennsylvania,* 122
U. S. 326; *Galveston, H. & S. A. Ry. Co.* v. *Texas,* 210 U. S. 217;
*Meyer* v. *Wells, Fargo & Co.,* 223 U. S. 298; *Minnesota Rate Cases,*
230 U. S. 352, 400; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292;
*United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 328; *New Jersey
Telephone Co.* v. *Tax Board,* 280 U. S. 338, 349; *Fisher's Blend Sta-
tion* v. *State Tax Commission,* 297 U. S. 650, 655; *Puget Sound
Stevedoring Co.* v. *Tax Commission,* 302 U. S. 90; *Western Livestock*
v. *Bureau of Revenue,* 303 U. S. 250.

  [11] *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *Spalding &
Bros.* v. *Edwards,* 262 U. S. 66, 69; *Cooney* v. *Mountain States Tel.
Co.,* 294 U. S. 384, 393.

  [12] Compare *Bass, Ratcliff & Gretton* v. *State Tax Comm'n,* 266
U. S. 271, 280; *Educational Films Corp.* v. *Ward,* 282 U. S. 379,
387–8.

within the State and it was permissible to measure the tax by the sales price of the goods produced rather than by their value at the date of manufacture. If the tax there under consideration had been a sales tax the city could not have measured it by sales consummated in another State. That the tax in the present case is not a tax on the manufacture but a tax on gross sales, is evident from the regulations promulgated pursuant to the Act and confirmed by an amendment of the statute adopted in 1937 under which, if the appellant had shipped its products to another State and thence sold them (as did the American Manufacturing Company), the receipts from the sales would be exempt from the gross income reached by the Act.[13]

So far as the sale price of the goods sold in interstate commerce includes compensation for a purely intrastate activity, the manufacture of the goods sold, it may be reached for local taxation by a tax on the privilege of manufacturing, measured by the value of the goods manufactured,[14] or by other permissible forms of levy upon

[13] Regulations 193 (4) "Persons resident and/or domiciled in Indiana who are engaged in business, the legal situs and location of which is in states other than Indiana, and the activities of such business are carried on in states other than Indiana, will not be required to pay tax upon the gross receipts therefrom."

Acts of Indiana, 1937, c. 117, p. 609: "That with respect to individuals resident in Indiana and corporations incorporated under the laws of Indiana authorized to do and doing business in any other state and/or foreign country, the term 'gross income' shall not include gross receipts received from sources outside the State of Indiana in cases where such gross receipts are received from a trade or business situated and regularly carried on at a legal situs outside the State of Indiana, or from activities incident thereto . . ."

[14] *Oliver Iron Mining Co.* v. *Lord,* 262 U. S. 172; *Hope Natural Gas Co.* v. *Hall,* 274 U. S. 284; *American Mfg. Co.* v. *St. Louis, supra.*

the intrastate transaction.[15]  It is because the tax, forbidden as to interstate commerce, reaches indiscriminately and without apportionment, the gross compensation for both interstate commerce and intrastate activities that it must fail in its entirety so far as applied to receipts from sales interstate.

We hold that, as respects the appellant's sales of its manufactured product in interstate and foreign commerce, the statute cannot constitutionally be enforced.

2. Will the imposition of the tax in respect of interest on the bonds of Indiana municipalities violate Article I, § 10 of the Constitution of the United States?

By an Act of March 9, 1903, entitled "An Act to exempt from taxation all bonds, notes and other evidences of interest-bearing debt issued by the State or by municipal corporations," it was provided "That all bonds, notes and other evidences of indebtedness hereafter issued by the State of Indiana or by municipal corporations within the State upon which the said State or the said municipal corporations pay interest shall be exempt from taxation."[16]  By an Act of March 11, 1919, tax laws of the State were codified and the Act of 1903 was incorporated without change as clause twentieth of § 5 of the codification.[17]  The section has since been amended but the twentieth clause remained unchanged at the date of the passage of the Gross Income Tax Act of 1933.

The appellant insists that the exemption granted in the Acts of 1903 and 1919, constitutes a contract with purchasers of municipal securities the obligation of which is unconstitutionally impaired by the attempt to tax the interest they yield.  The State replies that the Acts were

---

[15] *Utah Power & Light Co.* v. *Pfost*, 286 U. S. 165; *Federal Compress Co.* v. *McLean*, 291 U. S. 17; *Chassaniol* v. *Greenwood*, 291 U. S. 584.

[16] Acts of Indiana, 1903, c. CLXXIX, p. 322.

[17] Acts of Indiana, 1919, c. 59, § 5 (twentieth) p. 203.

not intended to create a contract and did not in fact do so, but that if they did, the covenant did not embrace interest payable on municipal obligations but only ad valorem taxation upon them.

When the exemption laws were adopted the State had no income tax law. Whatever may have been the background against which the Act of 1903 is to be construed, its setting, as a portion of the tax codification of 1919, is significant. The latter deals with two forms of taxation,—poll taxes and property taxes. It embodies a comprehensive scheme of annual assessment of real and personal property of individuals, partnerships, and corporations, including public utilities; makes provision for a return by taxpayers of complete inventories of property and, in the case of corporations, of the excess value of capital stock and surplus and of the value of franchises or privileges enjoyed; and provides for assessment by public officials for the purpose of the application of a rate ad valorem by various public bodies. The statute has nothing to say with respect to license, occupation, privilege or other excise taxes. In § 25 it provides that "Where bonds or stocks are now or may hereafter be exempted from taxation, the accrued interest on such bonds or dividends on such stock shall be listed and assessed, unless otherwise exempted, without regard to the time when the same is to be paid." Thus the legislature distinguished between the bonds themselves and the interest accrued upon them as separate subjects of assessment and ad valorem taxation. The Supreme Court of Indiana has consistently held that exemptions from taxation are not favored but are to be strictly construed.[18]

In the light of the foregoing facts we are of opinion that the case is controlled by *Hale* v. *Iowa State Board,*

[18] *South Bend* v. *University*, 69 Ind. 344, 348; *Read* v. *Yeager,* 104 Ind. 195, 199; 3 N. E. 856.

302 U. S. 95. We are unable, therefore, to hold that the decision of the Supreme Court is plainly wrong, even upon the assumption that in adopting the statutory exemption the legislature intended to, and in fact did, contract with purchasers of municipal bonds.

As respects the tax demanded on appellant's gross income from its business in interstate commerce, the judgment is reversed and, as respects the tax on interest received from obligations issued by municipalities of the State, the judgment is affirmed. The cause will be remanded for further proceedings not inconsistent with this opinion.

*Reversed in part; affirmed in part.*

MR. JUSTICE MCREYNOLDS is of opinion that the challenged judgment should be reversed *in toto.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, dissenting in part.

The Indiana statute of 1933 here invalidated imposes "a tax, measured by the amount or volume of gross income, . . . upon all residents of the State of Indiana, and upon the gross income derived from sources within the State of Indiana, of all persons and . . . companies, . . . who are not residents of . . . Indiana, but are engaged in business in Indiana." The tax is general in effect throughout the entire State, applying to all who do business and who receive annual incomes in the State above $1,000.00 (with minor exceptions). It falls uniformly upon all such gross incomes whether derived from interstate or intrastate business or from investments, interest or services.[1]

---

[1] The generality of this tax is made clear in its definition of gross income as including, with minor exceptions, "the gross receipts of the taxpayer received as compensation for personal services, and the

There is no contention that the statute was inspired by any spirit of antagonism or hostility to interstate commerce or that it discriminates against interstate commerce in amount or method of application.

Concurrently with the passage of this Revenue Act, the Indiana legislature limited the tax that could be imposed upon other forms of property by the State or any "taxing units within the state."[2] The Supreme Court of Indiana in the opinion below[3] said:

"Legislative history indicates that one of the purposes of the Gross Income Tax Law was to redistribute governmental burdens and relieve property of a tax burden which was thought to be too great."

Indiana passed this gross income tax law at a time when depressed economic conditions were causing the fiscal policies of many States to turn toward similar legislation.[4]

gross receipts of the taxpayer derived from trades, businesses or commerce, and the gross receipts proceeding or accruing from the sale of property, tangible or intangible, real or personal, or service, or any or all of the foregoing, and all receipts by reason of the investment of capital, including interest, discount, rentals, royalties, fees, commissions or other emoluments, however designated, . . ." Section (f), c. 50, Indiana Acts 1933.

[2] Acts of Indiana, 1933, p. 1085 (Act approved March 9, 1933). The Gross Income Tax Law was approved February 27, 1933, Acts 1933, Indiana, c. 50, 78th Session, p. 388.

[3] 7 N. E. (2d) 941, 945.

[4] "The obtaining of funds to replenish impoverished treasuries was the principal goal of the state legislatures in 1933. Relief to property also was a much sought after end. Property relief was accorded through reduced appropriations, lowered tax limits, and collection leniency. The drive for new revenue resulted in the adoption of gross income or gross sales taxes in fifteen states. . . .

"The development of the gross income or gross sales taxes is probably the outstanding tax news of the year." The Tax Magazine, Vol. 12, February, 1934, p. 63, "State Tax Legislation, 1933," Raymond E. Manning. Id., see p. 365, "Chart of State Sales, Gross Income, and License Taxes."

Serious financial difficulties of the States stimulated efforts to find new sources of taxation, and the widespread belief that property was bearing an unfair burden of taxes also substantially contributed to the levying of these new taxes.[5]

---

[5] "Indiana's fiscal strain was not to be found in the state government until the $1.50 property tax limitation adopted by the legislature in 1932 cut almost in half the state rate on property, which had been furnishing not far from one-fourth of total state revenues (including motor vehicle taxes). Coupled with a drastic shrinkage in assessed valuations and a demand for increased state aid to localities, this made it imperative for the state government to seek new revenue sources even though the other tax yields had been holding up fairly well through 1931–32. . . .

"It is evident that the local tax situation was the chief factor bringing about the sweeping change in the state's own system. For one not intimately acquainted with conditions in Indiana it is not easy to locate from the available data the precise sources of trouble, but whatever they may have been, the tax limitation law crystallized them, and the result is a threatened breakdown of governmental finance in many localities, unless the state succeeds in carrying out its greatly increased program of aid to localities through highway and school moneys. . . .

"The campaign in support of the [gross receipts] tax . . . was led by the Indiana Farm Bureau, which secured the signatures of a large number of farmers on a petition urging the passage of a sales tax. On February 12 a meeting of farmers and other property owners was held, and several thousand marched to the capitol. For several years the bureau had been urging the reduction of property taxes, and partly as a result of its efforts the $1.50 law was passed in the special session of 1932, limiting the state levy to 15 cents and all local levies to $1.35 per $100 of assessed value. . . .

."The Indianapolis Real Estate Board, in addition to cooperating with the Indiana Farm Bureau, worked with the Indiana Real Estate Association and the Federation of Community Civic Clubs. A meeting of all these organizations, held on February 10, 1933, passed resolutions favoring the sales tax."

"The Sales Tax in the American States," Haig and Shoup, (1934, Columbia University Press), 238, 241, 242.

Appellant is an Indiana corporation engaged in the business of manufacturing and selling road machinery. All of the machinery is manufactured in Indiana. Its office, only plant and all its properties are located in Indiana. Its products are sold to ultimate purchasers in Indiana and other States by independent distributors or through sales agents of appellant. All sales must be approved by, and all payments made to appellant's office in Indiana. While appellant is thus engaged in interstate commerce, obviously, a major portion of its activities takes place in Indiana.

The prevailing judgment here is that Indiana cannot constitutionally impose this tax measured by the gross income received by appellant in Indiana from that substantial part of its products (manufactured in Indiana) sold to purchasers in other States. It is held that the tax, thus applied, is prohibited by § 8, Article 1 of the Federal Constitution which provides that

"The Congress shall have power . . . to regulate commerce among the several states, . . . ."

The Indiana tax is not invalidated on the ground that it violates any law passed by Congress under this constitutional power to regulate interstate commerce.

This power to regulate commerce among the States "like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the Constitution." [6]

---

[6] Cf. *Gibbons* v. *Ogden*, 9 Wheat. 1, 196, 197. Since Congress has not acted upon this subject, the present case does not involve a manifestation by Congress of its paramount and exclusive authority to regulate an aspect of interstate commerce with which the states may deal (because of its local nature) until Congress acts. Cf. *New York Central & H. R. R. Co.* v. *County of Hudson*, 227 U. S. 248.

The question, therefore, is whether—in the absence of regulatory legislation by Congress condemning state taxes on gross receipts from interstate commerce—the Commerce Clause, of itself, prohibits *all* such state taxes, as "regulations" of interstate commerce, even though general, uniform and non-discriminatory.

All state taxes on gross receipts from interstate commerce do not discriminate against, or impose extraordinary burdens upon, that commerce. Those that do not, do no more than impose a normal burden of government upon that commerce. On the other hand, some state gross income taxes may be designed or applied so as seriously to impede the freedom of interstate commerce. If interstate commerce should be so impeded, Congress might—under its commerce power—find it "necessary and proper" to condemn *all* state taxes on gross receipts, in order to "carry into execution" its granted power to regulate and protect interstate commerce.[7] We are not here confronted with such a congressional enactment. Should the Indiana law, and *all* state taxes on gross receipts from interstate commerce, as such—in the absence of such enactment—be condemned as a regulation of interstate commerce in the constitutional sense?

"Taxation" and "regulation" are not synonymous; all state, county or city taxes that affect interstate commerce do not "regulate" it in the constitutional sense; unquestionably, taxes can be levied for revenue only. As pointed out by Mr. Justice Holmes in *Galveston, H. & S. A. Co.* v. *Texas*, 210 U. S. 217, 225, involving a state tax which was not general but was levied only on gross receipts laid on railroads:

"It being once admitted, as of course it must be, that not every law that affects commerce among the States is a

---

[7] Cf. *Houston, E. & W. T. Ry. Co.* v. *United States* (The Shreveport Case), 234 U. S. 342, 350 *et seq.*

regulation of it in a constitutional sense, nice distinctions are to be expected."

The majority there found that the tax on interstate transportation violated the Commerce Clause. The dissent, applying the similar principle that every gross receipts tax is not necessarily a regulation, insisted that the particular gross receipts tax involved did not "attempt to regulate commerce among the states" and should not "be taken as a tax on interstate commerce in the sense of the Constitution; for its operation on interstate commerce is only incidental, not direct." Both opinions recognized a distinction between taxes for revenue, which incidentally affect interstate commerce, and other taxes which directly regulate commerce. More recently, this Court has said in *Western Live Stock* v. *Bureau of Revenue*, 303 U. S. 250, 259:

"Recognizing that not every local law that affects commerce is a regulation of it in a constitutional sense, this Court has held that local taxes may be laid on property used in the commerce; that its value for taxation may include the augmentation attributable to the commerce in which it is employed; and, finally, that the equivalent of that value may be computed by a measure related to gross receipts when a tax of the latter is substituted for a tax of the former." [8]

---

[8] ". . . the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business. He is subject to a property tax on the instruments employed in the commerce, . . . and if the property devoted to interstate transportation is used both within and without the state a tax fairly apportioned to its use within the state will be sustained. . . . Net earnings from interstate commerce are subject to income tax, . . . and if the commerce is carried on by a corporation a franchise tax may be imposed, measured by the net income from business done within the state, including such portion of the income derived from interstate commerce as may be justly attributable

Many cases relied on to support the prevailing judgment here hold that state gross receipts taxes imposed on interstate "transportation" violate the Commerce Clause. While this construction of the Commerce Clause had been previously considered, it was fully clarified and delimited in *Philadelphia & Sou. S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, 341, 342, 344, 345, and that decision has served as the authoritative basis for subsequent decisions:

"The tax in the present case is laid upon the gross receipts for transportation *as such.* Those receipts are followed and caused to be accounted for by the company, dollar for dollar. It is those specific receipts, or the amount thereof, (which is the same thing,) for which the company is called upon to pay the tax. They are taxed, not only because they are money, or its value, but because they were received for transportation. No doubt a shipowner, like any other citizen, may be personally taxed for the amount of his property or estate, *without regard to the source from which it was derived, whether from commerce, or banking, or any other employment.* But that is an entirely different thing from laying a special tax upon his receipts in a particular employment. . . .

"It [the tax under consideration] is not a general tax on the income of all the inhabitants of the state; but a special tax on transportation companies. Conceding, however, that an income tax may be imposed on certain classes of the community, distinguished by the character of their occupations; this is not an income tax on the class to which it refers, but a tax on their receipts for transportation . . . It is clearly not such, but a tax on transportation only." (Italics supplied.)

---

to business done within the state by fair method of apportionment. . . . All of these taxes in one way or another add to the expense of carrying on interstate commerce, and in that sense burden it; but they are not for that reason prohibited." *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 255.

'Previous decisions had held that the Commerce Clause did not prohibit state taxes on gross receipts from interstate commerce.[9] The effect of these prior decisions was modified by the *Philadelphia Steamship Co.* case. The latter case decided (contrary to the previous decisions) that a state tax on gross receipts received for actual interstate transportation is prohibited by the Commerce Clause. In that case the tax invalidated was a selective

[9] ". . . it is not everything that affects commerce that amounts to a regulation of it, within the meaning of the Constitution. . . .

". . . we think it may safely be laid down that the gross receipts of railroad or canal companies, after they have reached the treasury of the carriers, though they may have been derived in part from transportation of freight between States, have become subject to legitimate taxation. It is not denied that net earnings of such corporations are taxable by State authority without any inquiry after their sources, and it is difficult to state any well-founded distinction between the lawfulness of a tax upon them and that of a tax upon gross receipts, or between the effects they work upon commerce, except perhaps in degree." *State Tax on Railway Gross Receipts,* 15 Wall. 284, 293, 296.

"The tax [15 Wall. 284] on gross receipts was held not to be repugnant to the Constitution, because imposed on the railroad companies in the nature of a general income tax, and incapable of being transferred as a burden upon the property carried from one State to another. . . .

". . . It is as important to leave the rightful powers of the State in respect to taxation unimpaired as to maintain the powers of the Federal government in their integrity.

"In the second of the cases recently decided, the whole court agreed that a tax on business carried on within the State and without discrimination between its citizens and the citizens of other States, might be constitutionally imposed and collected. . . .

"It is to be observed that Congress has never undertaken to exercise this power in any manner inconsistent with the municipal ordinance under consideration, and there are several cases in which the court has asserted the right of the State to legislate, in the absence of legislation by Congress, upon subjects over which the Constitution has clothed that body with legislative authority." *Osborne* v. *Mobile,* 16 Wall. 479, 481, 482.

tax applied to the particular business of transportation. Consequently, the Court did not decide whether a State could constitutionally impose a general gross income tax (such as Indiana's) to an interstate business (such as appellant's) not involving transportation. *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292, December, 1917, and *United States Glue Co.* v. *Oak Creek*, 247 U. S. 321, June, 1918, marked the all-inclusive condemnation of state taxes on gross receipts from interstate commerce, as a class— without regard to discrimination or generality.

However, as pointed out in the opinion, the "bare question" in the *Crew Levick* case was "whether a state tax imposed upon the business of selling goods in foreign commerce, insofar as it is measured by the gross receipts from merchandise shipped to foreign countries, is in effect a regulation of foreign commerce or an impost upon exports, within the meaning of the pertinent clauses of the Federal Constitution." The tax there involved was not a general income tax bearing uniformly upon all business within the State. When the opinion in the *United States Glue Co.* case—where a gross income tax was not in issue—indicated approval of an extension of the previous constitutional rule so as to condemn—as a class—*all* state taxes on gross receipts from interstate commerce, the Court clearly set out its reasons for the extension. The Court said that the distinction:

" . . . between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit

as to impede or discourage the conduct of the commerce. A tax upon the net profit has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States." Pp. 328–329.

A tax upon property used in interstate commerce, even with an augmented value due to such use, is not a regulation of commerce, is valid and is within the powers of the State.[10] Yet, the constitutional validity of a tax on property does not turn upon whether the property is profitable to its owner. Gross receipts from interstate commerce—as from all sources—vary and will probably rise and fall with property values. Therefore, the total amount exacted from interstate commerce under a gross receipts tax can fluctuate just as the total paid under a property tax. Since property and corporate franchises used in interstate commerce can be constitutionally taxed by States, whether profitable or unprofitable, it seems difficult to justify a constitutional test for state income taxes based upon existence or absence of profit.

The application of such a constitutional test will—as a practical matter—inevitably result in exempting *all*

---

[10] Cf. *Cudahy Packing Co.* v. *Minnesota*, 246 U. S. 450, 453, 454; *United States Express Co.* v. *Minnesota*, 223 U. S. 335, 345, 347.

enterprises engaged in interstate commerce from *all* state gross income taxes on interstate commerce receipts, whether profitable or not. At the same time, local intrastate enterprises, doing business in the same communities, must pay state gross receipts taxes whether profitable. or unprofitable. Such a construction of the Commerce Clause—designed to prevent a State from imposing unfair tax burdens upon those engaged in interstate commerce—actually serves to impose an unfair and discriminatory burden upon local intrastate business. Failure of an interstate business to make a profit does not relieve the State of its burden in affording protection for that business. While the federal government is charged with the constitutional duty of protecting and fostering interstate commerce by proper regulation [11] it has not attempted to provide local governmental protection for those engaged in such commerce. However desirable it may be, as a tax policy, to tax in accordance with ability to pay, the failure to make a profit should not of itself create a *constitutional* exemption from a tax which the State might otherwise impose.[12] And, as a practical matter, state taxing authorities may be moved by the consideration that profits are not always capable of ascertainment with complete accuracy and certainty.[13]

---

[11] *Dayton-Goose Creek Ry. Co.* v. *United States,* 263 U. S. 456, 478.

[12] *State Railroad Tax Cases,* 92 U. S. 575, 606; cf., *Ohio Tax Cases,* 232 U. S. 576, 590.

[13] Cf., with reference to a state tax law assailed as violative of the Fourteenth Amendment, dissent of Mr. Justice Cardozo: "But profits themselves are not susceptible of ascertainment with certainty and precision except as the result of inquiries too minute to be practicable. The returns of the taxpayer call for an exercise of judgment as well as for a transcript of the figures on his books. They are subject to possible inaccuracies, almost without number. Salaries of superintendence, figuring as expenses, may have been swollen inordinately; appraisals of plant, of merchandise, of patents, of what

It has been suggested, however, that Indiana might by law apportion to itself that part of a tax on gross receipts from interstate commerce to which it is entitled. Such an apportionment by Indiana would, in effect, fix the portion of such a tax for the other forty-seven States which appellant's interstate business might touch. Indiana has no authority to determine what, how, when or to what extent other States may tax within their respective boundaries. If such power of apportionment or allocation exists at all, it must be true that the only repository of a power touching complex and national aspects of interstate commerce is not Indiana, not the Judiciary—but the National Congress.

Interstate commerce constitutes a large part of the business of the nation. Until Congress, in the exercise of its plenary power over interstate commerce, fixes a different policy, it would appear desirable that the States should remain free to adopt tax systems imposing uniform and non-discriminatory taxes upon interstate and intrastate business alike.

It is also urged that a gross receipts tax under the Commerce Clause is invalid because it might result in multiple burdens on interstate commerce.[14] The possibility is suggested that the States may use gross income taxes to

not, may be erroneous or even fraudulent. In the words of a student of the problem, 'statements of profits are affected both by accounting methods and by the optimistic or pessimistic light in which the future is viewed at the time when the accounts are made up.' . . . These difficulties and dangers bear witness to the misfortune of forcing methods of taxation within a Procrustean formula. If the state discerns in business operations uniformities and averages that seem to point the way to a system easier to administer than one based upon a report of profits, and yet likely in the long run to work out approximate equality, it ought not to be denied the power to frame its laws accordingly." *Stewart Dry Goods Co.* v. *Lewis*, 294 U. S. 550, 576–577.

[14] See *Western Live Stock* v. *Bureau of Revenue*, 303 U. S. 250.

create direct, extraordinary, and unjust burdens upon interstate commerce and that this possibility requires that *all* state taxes on gross interstate commerce receipts be condemned as within the prohibition of the Commerce Clause. Congress was undoubtedly given the exclusive power to regulate commerce in order that undue, unjust and unfair burdens might not be imposed upon such commerce.[15] It was not intended, however, that interstate commerce should enjoy a preferred status over intrastate business or to remove those engaged in interstate commerce from the ordinary and usual burdens of the government which affords such commerce protection.[16] A court may act to protect a litigant from unfair and unjust burdens upon the litigant's interstate business. Yet, it would seem that only Congress has the power to formulate rules, regulations and laws to protect interstate commerce from *merely possible future unfair burdens.* Here the record does not indicate any charge or proof of an existing extraordinary, unfair or multiple tax burden on appellant. The tax burden from which appellant is here exempted is one which the local taxpayers of Indiana must bear. As a result, an unjust and unfair burden is actually imposed upon intrastate business, because of an apprehension of a possible future injury to interstate commerce. The control of future conduct, the prevention of future injuries and the formulation of regulatory rules in the fields of commerce and taxation, all present legislative problems.

This Court has sustained, and the majority opinion refers approvingly to a municipal license tax in Missouri, imposed in addition to an ad valorem property tax, in which the amount of the license was measured by the amount received for the interstate sale of goods manu-

---

[15] *Philadelphia & Sou. S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, 346.

[16] See *Woodruff* v. *Parham*, 8 Wall. 123, 137.

factured within the municipality.[17]  It is true that the amount of the license for a succeeding year was there measured by a percentage of the amount of sales for the preceding year, while the Indiana tax is paid quarterly during the year of sale.  However, if we look to substance and effect, disregard the nominal designation of each tax, and consider the realities of the two taxes, the tax burdens are identical under the approved Missouri tax and the disapproved Indiana tax.[18]  Numerous other decisions have recognized the principle of including receipts from interstate commerce in the figure (not wholly derived from such commerce) used in measuring the amount of a state excise tax.[19]

It has been often said that no formula can be devised for determining in all cases whether or not a state tax is prohibited by the Commerce Clause, and that "the question is inherently a practical one, depending for its decision on the special facts of each case, . . ."[20]  A formula which arbitrarily stamps *every* state gross receipts tax as a violation of the Commerce Clause, on the ground that it can be used for cumulative tax purposes, leaves unanswered the possibility that other taxes, previously held valid, may be used with like effects on interstate commerce; disregards the fact that in many cases, as here,

---

[17] *American Mfg. Co.* v. *St. Louis*, 250 U. S. 459.

[18] Apparently, if the Indiana tax had been "on the privilege of manufacturing, measured by the total gross receipts from sales of the manufactured goods, both intrastate and interstate" instead of designated as "a tax, measured by the amount or volume of gross income" received from manufacturing and sales interstate and intrastate, the tax would be held valid.  See, *Western Live Stock v. Bureau of Revenue*, 303 U. S. 250.

[19] *Hump Hairpin Co.* v. *Emmerson*, 258 U. S. 290, 294; *Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217; *Wisconsin & Michigan Ry. Co.* v. *Powers*, 191 U. S. 379; *United States Express Co.* v. *Minnesota*, 223 U. S. 335, 343.

[20] *Hump Hairpin Co.* v. *Emmerson, supra,* at 295

such a tax can be fairly and uniformly applied to both interstate and intrastate commerce; and in effect actually denies a State the privilege of using such a tax unless willing to impose unjust and unequal burdens upon its own citizens engaged in intrastate commerce.

The receipt of income is a taxable event and need not necessarily enjoy the immunity of the income's source.[21] Appellant's receipt of gross income could be taxed in one State only, because appellant received income only in Indiana. A sales tax might possibly be imposed upon independent distributors of appellant's products who do business in other States. Such tax would be constitutional only if it did not discriminate against appellant's products.[22] Distributors in States other than Indiana do

---

[21] In sustaining an income tax law of the State of New York against a challenge that it violated the Fourteenth Amendment, it was said: "That the receipt of income by a resident of the territory of a taxing sovereignty is a taxable event is universally recognized. Domicil itself affords a basis for such taxation. Enjoyment of the privileges of residence in the state and the attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government. 'Taxes are what we pay for civilized society.' . . . Neither the privilege nor the burden is affected by the character of the source from which the income is derived. For that reason income is not necessarily clothed with the tax immunity enjoyed by its source. . . . It may tax net income from operations in interstate commerce although a tax on the commerce is forbidden, *United States Glue Co. v. Oak Creek*, 247 U. S. 321; *Shaffer v. Carter*, . . . [252 U. S. 37, 50]." *New York ex rel. Cohn v. Graves*, 300 U. S. 308,' 312, 313. The dissent called attention to the fact that not only was the New York taxpayer subject to an income tax in that State by the decision, but that "New Jersey, in addition to tax on the land measured by its value, may lay a tax upon the income received by the owner for its use." *Id.*, p. 318.

[22] " 'A state tax upon merchandise brought in from another state, or upon its sales, whether in original packages or not, after it has reached its destination and is in a state of rest, is lawful only when the tax is *not* discriminating in its incidence against the merchandise because of its origin in another State.' *Sonneborn Bros. v. Cureton*,

business under the protection of their respective States. Under these circumstances, non-discriminatory sales taxes in those States upon the distributors create no unfair multiplication of taxes and would not be unconstitutional.[23] The manufacturer who receives protection under the laws of Indiana and the distributors who receive protection under the laws of the States in which products are sold, should be subject to uniform, non-discriminatory taxes imposed by the sovereign power of the States in which both do business under State protection.

Judicial interpretation of the Commerce Clause gradually evolved the principle that non-action by Congress is tantamount to a congressional declaration that the flow of commerce from State to State must be free from unfair and discriminatory burdens.[24] Throughout the decisions upon the question has run recognition of the supreme power of Congress to regulate interstate commerce, and the courts have stricken down state taxes when found to raise barriers impeding the free flow of commerce between the States, but not obstructing commerce between citizens within a single State. Courts—in the absence of congressional regulation of interstate commerce—have acted because there " . . would otherwise be no security against conflicting regulations of different States, each discriminating in favor of its own products and citizens, and against the products and citizens of other States. . . . . it is a matter of public history that the object

---

[262 U. S. 506] at p. 516. . . . Neither the power to tax nor the police power may be used by the state of destination with the aim and effect of establishing an economic barrier against competition with the products of another state or the labor of its residents. . . . They are thus hostile in conception as well as burdensome in result. The form of the packages in such circumstances is immaterial, whether they are original or broken." *Baldwin* v. *G. A. F. Seelig,* 294 U. S. 511, 526, 527. (Italics supplied.)

[23] *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506.

[24] See *Philadelphia & Sou. S. S. Co.* v. *Pennsylvania, supra.*

of vesting in Congress the right to regulate commerce with foreign nations and among the States was to insure uniformity of regulation against conflicting and discriminating State legislation." [25] With reference to borderline laws, it has been significantly pointed out that there " . . . is also, in addition to the restraint which those provisions [the Commerce Clause] impose by their own force on the States the unquestioned power of Congress, under the authority to regulate commerce among the States, to interpose, by the exercise of this power, in such a manner as to prevent the States from any oppressive interference with the free interchange of commodities by the citizens of one State with those of another." [26]

If it be true, as urged, that some state gross receipts taxes may possibly in the future be multiplied so as to burden interstate commerce unfairly, it is equally true that other state gross receipts taxes (as the Indiana tax) may not, in the absence of such multiplication, result in such burdens. Since the present litigation has developed that no such unfair burdens have been imposed upon appellant's interstate business, appellant can only be exempted from payment of this tax by application of a regulatory rule or law which condemns *all* such state taxes—whether fair or unfair. If such a general rule or law is to be promulgated it would seem that under our constitutional division of governmental powers such a regulatory policy should be considered and determined by Congress under its exclusive grant. It will be time enough for judicial protection when a litigant actually proves, in a particular case, that state gross receipts taxes levied against the litigant have resulted in unfair and unjust discrimination against the litigant because of engagement

---

[25] *County of Mobile* v. *Kimball,* 102 U. S. 691, 697.

[26] *Woodruff* v. *Parham,* 8 Wall. 123, 140.

in interstate commerce. Many arguments—which we might believe to be sound—can be advanced against the legislative policy of a gross receipts tax. These objections, however, are not the criterion of its constitutionality. With the wisdom of such fiscal policy of a State we are not concerned.[27] The interests of interstate commerce will best be fostered, preserved and protected—in the absence of direct regulation by the Congress—by leaving those engaged in it in the various States subject to the ordinary and non-discriminatory taxes of the States from which they receive governmental protection. For these reasons I believe that the entire judgment of the court below should be affirmed.

---

[27] Cf. *Purity Extract Co.* v. *Lynch,* 226 U. S. 192.