Turner, J.,
 

 dissenting. In response to appellant’s advertisements in nationally distributed publications, appellant received orders by mail from sixty-two residents of various other states throughout the United States. The name and address of each purchaser appears in the record.
 
 1
 

 Through a mass of interruptions and objections, the record discloses that appellant’s general manager and secretary was permitted to outline appellant’s method of doing business and to give the details of some typical cases. The witness testified that appellant’s business was obtained by the use of advertising in national publications. When inquiries were received, literature was -sent out. Correspondence developed into mail orders accompanied with deposits.
 

 Taking the case of Mr. Eichard Mathews of Ogden-berg, New York: Mr. Mathews wrote appellant for literature which was sent; correspondence followed, resulting in a mail order. When the trailer was finished appellant notified and billed Mr. Mathews, giving him also the serial number of the trailer and a bill of sale. Mr. Mathews caine to Trotwood, Ohio, with a New York state trailer license which was placed upon the trailer. Mr. Mathews paid appellant the balance due and the trailer left the factory behind an automobile Avhich also carried a New York license.
 

 In the ease of Mr. P. L. Hamlet of Middlesboro, Kentucky, the procedure was the1 same as in Mr. Mathews ’ case save that Mr. Hamlet did not pay cash in. full when he took his trailer but entered into a conditional
 
 *212
 
 sales contract or chattel mortgage which was financed through the Finance Securities Corporation of Toledo, Ohio. The Seller obtained the full cash price through the transaction.
 

 In the casé of Mrs. C. Rotgans: This lady came to appellant’s factory without previous correspondence. She was driving a car with a Florida license. As soon as the trailer was finished she took it to Florida.
 

 The evidence discloses: “Were each and every one of these trailers under question attached to an out-of-state car when they left your factory? A. Yes.”
 

 Had these trailers been delivered to a carrier f. o. b. Trotwood, Ohio, the majority would readily concede as disclosed by their opinion that the sales were made in interstate commerce. That delivery to a carrier f. o. b. point of origin is a delivery to the purchaser or consignee is so elementary as to need no citation of authorities. It is elementary also that
 
 qui facit per alium facit per se.
 
 I am unable to understand wherein the delivery of merchandise to a nonresident purchaser in person is any different in principle from the delivery at point of origin to such purchaser’s agent.
 

 We are not here discussing the case of' a traveler walking into a retail store and making a purchase of tobacco or a necktie and walking out, but we are discussing here an order which was secured through interstate advertising and which came by mail from the resident of another state, who in the course of interstate commerce came into the state to accept delivery of merchandise which in the course of interstate commerce he removed from the state.
 

 The Ohio sales tax is levied on retail sales made in this state of tangible property. (Section 5546-2, General Code.)
 

 The tax is to be paid by the purchaser. (Section 55^6-3, General Code.)
 

 The alleged liability of appellant arises from his
 
 *213
 
 failure to collect the tax from the purchaser with and at the same time as the price. (Section 5546-3, General Code.)
 

 The majority opinion cites a number of cases decided by the Supreme Court of the United States involving-taxes on property at rest in the state where taxed and not at the time in interstate commerce. It is respectfully submitted that such authorities are not apposite. Likewise, cases involving “sales completed entirely within the state” are not involved here.
 

 In the case of
 
 McGoldrick, Comp.,
 
 v.
 
 Berwind-White Coal Mining Co.,
 
 309 U. S., 33, 84 L. Ed., 565, 60 S. Ct., 388, 128 A. L. R., 876, relied upon in the majority opinion, there was involved a sales tax upon the purchase for consumption of tangible personal property where the transaction was consummated within the limits of the municipality and if effected either by a transfer of the title or possession within the municipality or by an agreement therefor. The purchase was consummated within the limits of the municipality and was for the purpose of consumption within the municipality although the property (coal) was to be transported from another state and delivered to the purchaser at points within the municipality. Mr. Justice Stone, at page 55 (L. Ed., 576), stated in substance that in that case there was an analogy in principle to the caaes levying property taxes.
 

 A very material difference between the
 
 Berwind-White case
 
 and the instant case is to be noted in the fact that in the former case, the ordinance under consideration specifically provided: “This Act shall not authorize the imposition of a tax on any transaction originating and/or consummated outside of the territorial limits of * * * [the] city,” whereas in the instant case the transactions did originate outside of the territorial limits of Ohio.
 

 As pointed out by Mr. Justice Stone, at page 49, L.
 
 *214
 
 Ed., 572, the tax in the
 
 Berwind-White case
 
 was “laid upon every purchaser, within the state, of goods for
 
 consumption,
 
 regardless of whether they have been transported in interstate commerce. Its only relation to the commerce arises from the fact that immediately preceding transfer of possession to the purchaser witR in the state, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce and brought to its journey’s end.” (Italics ours.)
 

 In the instant case a tax is being imposed upon a nonresident purchaser who ordered the merchandise through the United States mails and who personally transported his purchase to his own state. The evidence in this case is clear that the purchaser came into the state in the course of interstate commerce, took delivery of the article which he had bought through interstate commerce and removed it from the state in the course of interstate commerce. That this tax is á burden upon interstate commerce is illustrated by the fact that the nonresident must pay a use tax in his own state on the same article for which the majority opinion holds he must pay a sales tax in this state.
 

 I am of the opinion that the principle announced in the case of
 
 Gwin, White & Prince, Inc.,
 
 v.
 
 Henneford,
 
 305 U. S., 434, 83 L. Ed., 272, 59 S. Ct., 325, is controlling here. The sales tax is analogous to a gross receipts tax. As therein stated by Mr. Justice Stone (page 439):
 

 “The present tax [on gross receipts], though nominally local, thus in its practical operation discriminates against interstate commerce, since it imposes upon it, merely because interstate commerce is being done, the risk of a multiple burden to which local commerce is not exposed.”
 

 The case of
 
 Dept. of Treasury of Indiana
 
 v.
 
 Wood Preserving Corp.,
 
 313 U. S., 62, 85 L. Ed., 1188, 61 S.
 
 *215
 
 Ct., 885, discussed in the majority opinion did not attempt to modify the holding in the case of
 
 Gwin, White & Prince, Inc., supra.
 
 Instead the court distinguished its decision in
 
 J. D. Adams Mfg. Co.
 
 v.
 
 Storen,
 
 304 U. S., 307, 82 L. Ed., 1365, 58 S. Ct., 913, 117 A. L. R., 429, which involved the same Indiana gross income act, from the facts then under consideration. The instant case falls within the doctrine of the
 
 J. D. Adams Mfg. Co. case
 
 which was relied upon in the
 
 Gwin, White & Prince, Inc. case.
 

 Appellant attempted to prove that it was required to furnish,out-of-state purchasers with data upon which to compute the use tax in purchaser’s home state.
 

 However, this court is required by the provisions of Section 12102-31, General Code,’ to “take judicial notice of the statutes of every state, territory and other jurisdiction of the. United States.”
 

 Ohio, like other states, levies a use tax on the consumer of property used in this state on which no Ohio sales tax has been paid. (Section 5546-26, General Code.)
 

 The question here is one of unconstitutional application for the reason that Section 5546-2 (8), General Code, specifically provides that the Ohio sales tax does not apply to sales which are not within the taxing power of the state under the Constitution of the United States.
 

 It is a safe assumption that the General Assembly did not intend by what it said to handicap an Ohio manufacturer by requiring him to collect a sales tax from a purchaser who would have to pay a use tax in his home state. Certainly, such procedure would discourage the purchasing of Ohio products.
 

 As to the procedural question, I concur in the conclusion reached by the majority but for a different reason. It is a well-recognized rule of construction that when the legislative body has enacted a statute deal
 
 *216
 
 ing specifically with a particular subject such statute controls and excludes the provisions of a general statute. Section 5611, General Code (118 Ohio Laws, 353), provides tbe method by which appeals may be taken to the Board of Tax Appeals from a final determination of the Tax Commissioner. This statute pertains only to appeals to the Board of Tax Appeals from decisions by the Tax Commissioner. I am of the opinion that the provision in respect of the contents of such notice is directory and if such notice is not made definite upon motion, the defect may be considered as waived, at least in the absence of a showing of prejudice to the Tax Commissioner. In the instant case there is no such showing of prejudice.