## INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION v. NEBEKER.

[No. 29,004. Filed December 15, 1953. Rehearing denied January 27, 1954.]

*Edwin K. Steers,* Attorney General, *John J. McShane, Lloyd C. Hutchinson, Earl E. Schmadel, George B.*

*Hall,* and *John D. Reed,* Deputy Attorneys General, for appellant.

*Raymond O. Evans,* of Crawfordsville, for appellee.

FLANAGAN, J.—In the case of *Freeman* v. *Hewit* (1947), 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 265, the Supreme Court of the United States decided that an Indiana citizen who bought stock on the New York Stock Exchange was engaged in interstate commerce, and therefore was not subject to tax on those transactions under the Gross Income Tax Law of the State of Indiana. In that case the Indiana citizen actually bought and paid for the stock.

The question here presented is whether that decision governs buying on margin.

The factual difference, as we understand it, is that when stock is bought on margin the broker advances a percentage of the purchase price, holds a lien on the stock for his advancement, and does not permit the stock certificate to be put in the name of the customer unless the customer pays in full, which rarely happens.

This factual difference merely relates to the method of financing.

However, the State of Indiana contends that transactions of this kind are only matters of bookkeeping; that, since the stock certificates themselves do not cross state lines, no question of interstate commerce is involved.

We cannot agree. Importance cannot attach to whether a piece of paper goes over state boundaries. Importance must attach to whether the *transaction itself* was a part of interstate commerce.

As the Supreme Court of the United States pointed out in the case of *Freeman* v. *Hewit, supra,* the vital

question in each case is whether the *sale itself* was in the field of interstate commerce. The evidence of the transaction may float around the world or stay safely buried in a gilded vault on Wall Street. It seems to us to make no decisive difference.

The trial court held that the facts in this case bring it within the rule laid down in the *Freeman Case*. We think the trial court was correct.

Judgment affirmed.

### DISSENTING OPINION

EMMERT, J.—The net effect of the majority opinion is a decision that a net income tax assessed against a resident of Indiana upon his capital gains realized from sales of common stock on the New York Stock Exchange, when the certificates remained in New York, violates the Commerce Clause of the Federal Constitution. This contravenes the ruling precedents of the Supreme Court of the United States, which are binding on this court, on the right of the states to impose taxes which are not in violation of the Commerce Clause.

The appellee, hereafter referred to as the taxpayer, was a resident of and domiciled in Indiana and in the years 1944, 1945 and 1946, through two brokerage firms who had branch offices in Indiana, bought and sold corporate stocks on the New York Stock Exchange. The stocks here involved were bought and sold on a margin account, the certificates being taken in a street name, and held by the brokers in New York as agents for the plaintiff. The certificates were pledged to the brokers as security for any indebtedness that might be owing from the taxpayer to his brokers. Under the stipulation made in the trial court by the appellant, hereinafter referred to as Indiana, and the taxpayer, the difference between the sale price, and the purchase price paid by the taxpayer at the time of acquisition,

resulted in a gain in each transaction in the total sums as follows:

| Years | Number of Sales | Shares Sold | Gains |
|-------|-----------------|-------------|-------|
| 1944 | 32 | 3,310 | $ 8,839.74 |
| 1945 | 31 | 3,200 | 14,699.82 |
| 1946 | 13 | 1,250 | 7,425.44 |

No losses sustained by the taxpayer from the sale of any corporate stock were deducted from these gains. The taxpayer allocated his $1,000 deduction under §64-2605(b), Burns' 1951 Replacement, to other transactions, and asserted in the trial court he was entitled to a refund for taxes paid as follows:

| | |
|---|---|
| 1944 claimed refund | $ 88.39 |
| 1945 claimed refund | $146.99 |
| 1946 claimed refund | $ 76.63 |
| Total claimed refund | $311.51 |

We are not concerned in this appeal with the validity of Regulation 1005 since the taxpayer paid the taxes in dispute under the assumption that it applied to him, and Indiana asserts that this regulation furnishes the basis for computing the taxes owed for the respective years.

We should not let the decision in this case be influenced by the name given the Act by the General Assembly.[1]

"In passing on the constitutionality of a tax law 'we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it.' *Lawrence* v. *State Tax Comm'n*, 286 U. S. 276, 280; *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167, 177; *Wisconsin* v. *J. C. Penney*

---

1. "This act may be cited as the Gross Income Tax Act of 1933." Section 64-2601, Burns' 1951 Replacement.

*Co.,* 311 U. S. 435." *Nelson* v. *Sears, Roebuck & Co.* (1941), 312 U. S. 359, 363, 61 S. Ct. 586, 85 L. Ed. 888, 132 A. L. R. 475.[2]

In considering the validity of the various provisions of the Indiana Act, the Supreme Court of the United States has held that the provisions then before it substantially imposed a tax on gross receipts, and was therefore analogous to a sales tax. *Adams Mfg. Co.* v. *Storen* (1938), 304 U. S. 307, 311, 58 S. Ct. 913, 82 L. Ed. 1365, 117 A. L. R. 429; *Harvester Co.* v. *Dept. of Treasury* (1944), 322 U. S. 340, 64 S. Ct. 1019, 88 L. Ed. 1313; *Freeman* v. *Hewit* (1946), 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 265.

However, under the law and the facts in this appeal the tax asserted by Indiana is not a gross receipts tax under any possible definition of the term. It is a tax upon the capital gain in each transaction, with no deduction permitted for transactions in which the taxpayer may have sustained a capital loss by sale of corporate stock at less than the purchase price. Therefore the decisions in *Adams Mfg. Co.* v. *Storen* (1938), 304 U. S. 307, 311, 58 S. Ct. 913,. 82 L. Ed. 1365, 117 A. L. R. 429, *supra,* and *Freeman* v. *Hewit* (1946), 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 265, *supra,* establish no basis for holding the taxpayer immune from the Indiana tax on his capital gains.

In substance, Indiana has sought to impose a net income tax on the capital gains transactions realized on a margin stock account, by an Indiana resident

---

2. "Indeed, if we are to remain concerned with the practical operation of these state taxes rather .than with their descriptive labels (*Nelson* v. *Sears, Roebuck & Co.*, 312 U. S. 359, 363), we must acknowledge that the sales tax sustained in the Berwind-White case 'was, in form, imposed upon gross receipts from an interstate sale.' Lockhard Gross Receipts Taxes on Interstate Transportation and Communications, 57 Harv. L. Rev. 40, 87." *Harvester Co.* v. *Dept. of Treasury* (1944), 322 U. S. 340, 346, 64 S. Ct. 1019, 88 L. Ed. 1313.

domiciled in this state. The fact that from an accounting standpoint the taxpayer had other costs in the transactions which he may not deduct for the purpose of computing the tax, does not make the tax any the less a net income tax. It could hardly be contended that §23 (h) of Ch. 1, of the U. S. Internal Revenue Code, 26 U.S.C.A. §23 (h), which provides that, "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions," makes the Act a tax on gross receipts. See also §117 (d) of Ch. 1 of the U. S. Internal Revenue Code, 26 U.S.C.A. §117 (d) [3]

"The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminsh the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax

---

3. (1) "In the case of a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of gains from such sales or exchanges.

(2) "In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer of $1,000, whichever is smaller. For purposes of this paragraph, net income shall be computed without regard to gains or losses from sales or exchanges of capital assets. If the tax is to be computed under Supplement T, 'net income' as used in this paragraph shall be read as 'adjusted gross income.' Section 117(d), Ch. 1, U. S. Internal Revenue Code, 26 U.S.C.A. §117(d).

cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States." *U. S. Glue Co.* v. *Oak Creek* (1918), 247 U. S. 321, 328, 329, 38 S. Ct. 499, 62 L. Ed. 1135. The Indiana tax in controversy here violates neither the Commerce Clause nor the Fourteenth Amendment of the Federal Constitution.

The judgment of the trial court should be reversed.

Draper, C. J., concurs in this opinion.

NOTE.—Reported in 116 N. E. 2d 104.