## GROSS INCOME TAX DIVISION, STATE OF INDIANA
### *v.* STRAUSS.

[No. 28,350. Filed May 6, 1948. Rehearing Denied June 25, 1948.]

Aff'd.

*Cleon H. Foust,* Attorney General, *John J. McShane, Eugene M. Fife, Jr.* and *Lloyd C. Hutchinson,* Deputy Attorneys General, for appellant.

*Donald R. Mote,* of North Manchester, for appellee.

GILKISON, J.—Appellee is a resident citizen of Wabash County, Indiana, engaged in farming, breeding, raising, feeding and selling livestock, poultry, and poultry products, and she so resided and was so engaged during the years 1942, 1943 and 1944. During each of these years, through the Farmers Shipping Association of North Manchester, Indiana, a nonprofit organization of which she was a member, she shipped her livestock, poultry and poultry products to market at Chicago, Illinois, and at Buffalo and New York City, New York. The shipments were made sometimes by railroad, sometimes by automobile trucks and other facilities. The property shipped was delivered to commission merchants in the cities and states aforementioned to be properly cared for, graded and sold on the markets of such cities. After deducting commissions, maintenance and insurance charges, and transportation expenses, the residue received from such sales was paid to appellee.

Appellee did not return the sums so received for gross income taxes, and paid no gross income tax to the state on the sums so received. On January 25, 1946, she received a notice and demand for payment from appellant, Gross Income Tax Division, State of Indiana, for tax on such items, a total sum in tax, penalty and interest of $136.00.

At the same time she was notified that "to avoid seizure of property this assessment must be paid to Gross Income Tax Division, 141 South Meridian Street, Indianapolis, Indiana, not later than February 4, 1946." Appellee complied with the notice received, paid the

tax, penalty and interest demanded together with additional interest of 90 cents, a total of $136.90 for the three years. Contemporaneous with the payment she filed her verified claim for refund of such taxes, penalties and interest. This claim appellant denied in full, May 11, 1946. Appellee then brought this action in the Wabash Circuit Court to recover the payments so made with interest thereon, agreeable with § 64-2614 Burns' 1943 Replacement (Supp.).

The cause was tried by the court, resulting in a finding and judgment for appellee in the sum of $141.00, being the amount of tax, penalty and interest paid and interest thereon at the rate of 3% per annum from the date of its payment to the date of judgment.

A motion for new trial for the statutory causes was overruled and the cause appealed. Error assigned is the overruling of appellant's motion for new trial.

If appellee's transactions from which she received the income upon which the tax was assessed by appellant, were transactions in interstate commerce, no gross income tax could be lawfully assessed thereon. If they were not transactions in interstate commerce, the tax was properly assessed. This is true because the states have surrendered to the United States Government the right and duty to regulate commerce among the several states by clauses 3 and 18 of Art. 1, § 8 of the United States Constitution.

The parts thereof applicable to this case are as follows:

"The congress shall have power . . . (3) To regulate commerce with foreign nations, and among the several states, and with the Indian tribes. . . .

"(18) To make all laws which are necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof."

See *Freeman* v. *Hewit* (1946), 329 U. S. 249, 252, 91 L. ed. 265, 271, 67 S. Ct. 274; *Southern Pacific Co.* v. *Arizona* (1945), 325 U. S. 761, 89 L. ed. 1915, 65 S. Ct. 1515.

The gross income tax law of Indiana expressly exempts from its burdens, income received from interstate commerce. This exemption is found in the original act as follows: "There shall be excepted from the gross income taxable under this act: (a) So much of such gross income as is derived from business conducted in commerce between this state and other states of the United States, or between this state and foreign countries, to the extent to which the State of Indiana is prohibited from taxing under the Constitution of the United States of America. . . ." Acts 1933, p. 392, 393. This exemption has been carried forward in all amendments in substance. Acts 1937, p. 615, was in effect during 1942 and part of 1943, and Acts 1943, p. 433 was in effect from its effective date in 1943, through 1944. § 64-2606. (a) Burns' 1943 (Supp.).

The Supreme Court of the United States frequently has been obliged, in specific cases, to determine whether or not particular transactions constitute interstate commerce, but we have been unable to find, that it ever has attempted to give a comprehensive definition of the term. In *Hopkins* v. *United States* (1898), 171 U. S. 578, 597, 43 L. ed. 290, 298, Mr. Justice Peckham says:

"Definitions as to what constitutes interstate commerce are not easily given so that they shall clearly define the full meaning of the term. We know from the cases decided in this court that it is a term of very large significance." See also *Welton* v. *Missouri* (1875), 91 U. S. 275, 280, 23 L. ed. 347, 349. *County of Mobile* v. *Kimball* (1880), 102 U. S. 691, 697, 26 L. ed. 238, 239.

But at page 298 the Hopkins case, the Justice further said, that interstate commerce "comprehends, as it is said, intercourse for the purposes of trade in any and all its forms, including transportation, purchase, sale, and exchange of commodities between the citizens of different states, and the power to regulate it embraces all the instruments by which such commerce may be conducted." See also *Gloucester Ferry Co.* v. *Pennsylvania* (1884), 114 U. S. 196, 203, 29 L. ed. 158, 162; *United States* v. *E. C. Knight Co.* (1895), 156 U. S. 1, 14, 39 L. ed. 325, 329; *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211, 241, 44 L. ed. 136, 147; *Swift & Co.* v. *United States* (1905), 196 U. S. 375, 398, 49 L. ed. 518, 525.

In *Swift & Co.* v. *United States, supra,* Mr. Justice Holmes, said:

". . . commerce among the states is not a technical legal conception, but a practical one, drawn from the course of business. When cattle are sent for sale from a place in one state, with the expectation that they will end their transit, after purchase, in another, and when in effect they do so, with only the interruption necessary to find a purchaser at the stock yards, and when this is a typical, constantly recurring course, the current thus existing is a current of commerce among the states, and the purchase of the cattle is a part and incident of such commerce. . . ."

In *Dahnke-Walker Milling Co.* v. *Bondurant* (1921), 257 U. S. 282, 291, 66 L. ed. 239, 244, where appellant purchased wheat in Kentucky, to be delivered to a common carrier for immediate shipment to its mills in Tennessee, speaking for the court on the interstate commerce aspect of the situation, Mr. Justice Vandeventer, after quoting from some of the decisions referred to in this opinion, and many others, said:

"In no case has the court made any distinction between buying and selling, or between buying for transportation to another state and transporting for sale in another state. Quite to the contrary, the import of the decisions has been that if the transportation was incidental to buying or selling, it was not material whether it came first or last."

In *Southern Pacific Co.* v. *Arizona, supra,* at page 769, L. ed. page 1924, Mr. Chief Justice Stone, in discussing the line of demarcation between the rights of the Federal Government and the rights of the states in the matter of regulating interstate commerce, among other things said:

"For a hundred years it has been accepted constitutional doctrine that the commerce clause, without the aid of Congressional legislation, thus affords some protection from state legislation inimical to the national commerce, and that in such cases, where Congress has not acted, this Court, and not the state legislature, is under the commerce clause the final arbiter of the competing demands of state and national interests. (authorities) . . . There has thus been left to the states wide scope for the regulation of matters of local state concern, even though it in some measure affects the commerce, *provided it does not materially restrict the free flow of commerce across state lines, or interfere with it in matters with respect to which uniformity of regulation is of predominant national concern.*" (Our emphasis).

In discussing the Indiana Gross Income tax Act of 1933 pp. 388, 392, as amended, Acts 1937, p. 615, and which has been later amended by Acts 1941, p. 418; Acts 1943, p. 425; Acts 1945, p. 311; Acts 1947, p. 1471; § 64-2601 Burns' 1943 Replacement (Supp.) in its relation to the Federal Constitution, in *Freeman* v. *Hewit, supra,* at page 255, L. ed. page 273, Mr. Justice Frankfurter, among other things, said:

"This case, like J. D. Adams Mfg. Co. v. Storen, 304 U. S. 307, 82 L. ed. 1365, 58 S. Ct. 913, 117 A. L. R. 429, supra, involves a tax imposed by the State of the seller on the proceeds of interstate sales. To extract a fair tithe from interstate commerce for the local protection afforded to it, a seller State need not impose the kind of tax which Indiana here levied. As a practical matter, it can make such commerce pay its way, as the phrase runs, apart from taxing the very sale. . . . (authorities).

The court then names four different taxes that could be levied to "make such commerce pay its way"; and then continues:

"These illustrative instances show that a seller State has various means of obtaining legitimate contribution to the cost of its government, without imposing a direct tax on interstate sales. While these permitted taxes may, in an ultimate sense, come out of interstate commerce, they are not, as would be a tax on gross receipts, a direct imposition on that very freedom of commercial flow which for more than a hundred and fifty years has been the ward of the Commerce Clause. . . . ."

Appellant now insists that the Indiana Gross Income Tax is a tax on the privilege of domicile. To support this contention it cites: *Kirtland* v. *Hotchkiss* (1879), 100 U. S. 491, 498, 499, 25 L. ed. 558, 561, 562. In that case the tax involved was a property tax—not an income tax, and the commerce clause of the Federal Constitution was not involved. The court held "the debt in question, then, having its situs at the creditor's residence and constituting a portion of his estate there, both he and the debt are, for purposes of taxation, within the jurisdiction of the State." This case does not support appellant's contention.

Appellant cites *Lawrence* v. *State Tax Commission* (1932), 286 U. S. 276, 76 L. ed. 1102, in which Mr.

Chief Justice Stone for the court, calls attention to the fact that the United States Constitution gives the Federal government the exclusive power to regulate interstate and foreign commerce, and leaves the states unrestricted in their power to impose *other taxes* upon those domiciled within them, if the tax is imposed upon property within the state or on privileges enjoyed there, and is not so palpably arbitrary as to infringe the 14th Amendment. There is nothing in this case supporting appellant's contention.

However, in *J. D. Adams Mfg. Co.* v. *Storen, supra,* Mr. Justice Roberts, at page 311, L. ed. 1369, speaking of the Indiana Gross Income Tax, says ". . . The Attorney General says in his brief that it is a privilege tax upon the receipt of gross income. We think this is a correct description. We conclude that the tax is what it purports to be,—a tax upon gross receipts from commerce. Appellant's sales to customers in other states and abroad are interstate and foreign commerce. . . ."

We agree with the above opinion with respect to the nature of the tax (see cl. (f) § 1, Acts 1933, p. 389, also § 64-2601 Burns' 1946 Replacement, cl. (m), but no matter what it may be called, or what its purposes are, it cannot be allowed to fasten upon or materially burden interstate commerce. In the case at bar the sales made by appellee to customers in other states have all the attributes of interstate commerce as enumerated by the United States Supreme Court in the cases cited in this opinion and others. They comprehended intercourse for the purpose of trade, including transportation by common carrier, purchase, sale and exchange of commodities between the citizens of different states, "with only the interruption necessary to find a purchaser at the stockyards." *Swift*

& Co. v. *United States, supra. Hopkins* v. *United States, supra.* Through the years involved, this was a typical constantly recurring course of business of appellee, and the current thus existing is a current of commerce among the states. We do not believe it has ever been the intention of the Indiana Legislature to attempt to apply the gross income tax to income of its citizens received from interstate commerce. The exemption in § 6 of the original act and all revisions thereof as heretofore noted, clearly indicate it has never so intended. But whatever may have been its intentions, it is clear to us that in this case the gross income tax authorities are trespassing upon grounds that were long ago surrendered to the Federal Government, and which it continues to retain. Practically every citizen has a domicile somewhere in this nation, where he must pay all the taxes required by the constitutional laws of the state or territory of his domicile and such local tax as may be lawfully levied. But no citizen may be required by his state or other local authority to pay a tax on his receipts from, or transactions in interstate commerce, under the guise of a domiciliary tax. That field of regulation belongs alone to the national government. That appellant is permanently domiciled in Indiana is no reason why her transactions in interstate commerce may be taxed by the state. That she is but a small producer and could readily find a market for her merchandise within the state, does not affect the fundamental nature of the questioned transactions. That she did not have her goods sold before she shipped them to a market out of the state is likewise immaterial, since the interstate nature of the commerce is not affected by whether the shipment was before or after the sale. *Dahnke-Walker Milling Co.* v. *Bondurant, supra; Swift & Co.* v. *United States, supra,*

*Stafford* v. *Wallace* (1921), 258 U. S. 495, 522, 66 L. ed. 735, 744.

Finding no error the judgment is affirmed.

Emmert, C. J., not participating.

Note.—Reported in 79 N. E. 2d 103.