**HERLIHY MID–CONTINENT COMPANY, Plaintiff-Appellee,**

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY, Defendant-Appellant.**

**No. 11922.**

United States Court of Appeals Seventh Circuit.

June 21, 1957.

Rehearing Denied July 23, 1957.

Edwin H. Friedrich, R. Stanley Anderson, Edmund A. Schroer, Hammond, Ind., Lawyer, Friedrich, Petrie & Tweedle, Hammond, Ind., of counsel, for appellant.

Martin J. McNally, Chicago, Ill., Thomas D. Nash, Jr., Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff sued to recover, under the terms of certain contracts, amounts exacted from and paid by it under the Indiana Gross Income Tax Law. Burns' Indiana Stats. §§ 64–2602, 64–2603(g). The cause, tried by the court without a jury, resulted in judgment for plaintiff in the sum of $31,529.55.

Multiple construction contracts were consummated between the parties wherein plaintiff, a building contractor, agreed to perform certain work in connection with the construction of defendant's generating system near Michigan City, Indiana. The first contract, identified as K–814, executed August 13, 1948, provided that the contractor would be paid for the "net cost" of the work, plus a fixed fee covering overhead and profit and a fixed equipment rental. In other words, plaintiff agreed to advance all

costs, and for them it was to be reimbursed, in addition to overhead and profit. The contract defined "net cost" as follows: "It is mutually agreed that the Net Cost of the work shall include all expenses incurred by Contractor which are *directly chargeable to the work*, and that said Net Cost of the work shall, without restricting the generality of the foregoing, include the following items: * * * Amounts required by any Federal, State or local taxes *applicable to the Work*, including old age benefit and unemployment taxes. * *"* (Emphasis supplied.) Thus, it is to be kept in mind that the contract specifically defines by way of example but not by way of exclusion expenses "directly chargeable to the work" in part as State taxes "applicable to the work."

On October 19, 1948, the second contract, K–825, was executed. It defined the term "net cost" in precisely the same terminology as that employed in contract K–814. The third contract, K–851, dated October 27, 1948 differed from the other two in that payment was based on firm unit prices rather than "net cost plus a fixed fee." However, it contained a cost provision, with which we are here concerned, by including in the extra work clause the following provision: " 'Cost Plus' basis on which Bidder will perform extra work on old steel authorized by Purchaser and not covered by the unit prices. This should be based on the cost of labor, material, taxes and insurance; plus a percentage, which percentage shall include general superintendent, field office overhead, use of hand tools and profit * * *."

All the instruments were prepared by the engineering firm of Sargent and Lundy, employed by defendant to prepare contracts, plans and specifications, and to aid in the procurement of bids. After contracts were awarded, their further duties entailed supervising construction and checking and approving invoices submitted by the contractor.

After commencement of work under contract K–814, plaintiff sent defendant several invoices. The first in point of time, that of September 30, 1948, set forth amounts claimed to be due for labor, materials and other items, but did not include a charge for the Indiana Gross Income Tax. Later, however, invoices dated October 30, 1948, November 16, 1948, and November 30, 1948, respectively, contained as an item of cost the tax applicable to moneys received by plaintiff for performance of the work. The November 16th invoice included a charge for the tax item which had been omitted from the initial September bill. After the invoices had been examined and tentatively approved by defendant, they were forwarded to Sargent and Lundy, by whom they were then checked and certified for payment. After this certification, the invoices were mailed to defendant's principal office where that part of each pertaining to the tax was stricken, defendant refusing to pay it as an item of cost. As a result of the controversy as to which of the two contracting parties should ultimately bear the thrust of this item, on December 28, 1948, a meeting was held between plaintiff's president, now deceased, and two employees of defendant, as a result of which, it was decided that the demand for the tax would be stricken from the bills. Defendant contends that in the event that the terms of the contract are found to be ambiguous, this conduct of the parties should be construed as a practical construction of the terms of the contract by the parties. In the event that an interpretation favorable to plaintiff is reached, it is urged that by its action plaintiff has waived its right to reimbursement under the contract.

Subsequent to the meeting of December 28, plaintiff sent 19 invoices under contract K–814 wherein no charge was included for the tax, all of which were paid by defendant. The tax item was not included in any of the 42 invoices submitted under contract K–825. Under contract K–851 the first invoice of August 5, 1949 contained a charge for the Gross Income Tax, but it was later eliminated. Subsequent invoices under contract K–851 did not contain charges

for the tax. However, on November 30, 1950, plaintiff commenced submitting separate invoices which included only charges for the tax: these were never paid by defendant. Plaintiff continued to pay the entire Indiana income tax attributable to the moneys received from defendant and it is to recover that amount that this suit was brought.

We lay aside for the moment the issues involving the alleged waiver and certain evidentiary questions, for it is first necessary to determine whether the construction placed upon them by the trial court can be sustained. The court found: "The State of Indiana Gross Income Taxes in the total amount of $31,529.55 which the plaintiff paid on moneys received from the defendant as net costs for expenses incurred by plaintiff are state taxes applicable to the Work, and under the provisions of the contracts in question the plaintiff is entitled to payment from the defendant of such State of Indiana Gross Income taxes as part of plaintiff's net costs of the Work."

In approaching the problem, it is well to keep in mind that the parties, as a matter of contract, may shift the burden of the tax. Thus, Regulation 404, of the Gross Income Tax Division of the State of Indiana, in effect at all times pertinent to this litigation, provided: "Passing the Tax on.—Since the gross income tax Act is silent upon the matter of adding this tax to the selling price or charges, the adding of such tax to such selling price or charges must be entirely a matter of contractual agreement between the buyer and the seller, and the Department will therefore neither authorize the adding of the tax nor condemn the failure so to do, and will look only to the taxpayer for the tax upon his total gross receipts. Since taxpayers are not made the agents of the State to collect gross income tax, any amount added as the tax and collected by a taxpayer must be considered as an additional price received, and will be a part of the gross receipts of a taxpayer and must be reported as taxable income."

And, it is equally clear that we are dealing with a privilege tax upon the receipt of gross income as distinguished from a tax on property. See J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365; Gross Income Tax Division, State of Indiana v. Strauss, 226 Ind. 329, 79 N.E.2d 103. Despite the verity of these statements, it becomes essential to examine with particularity the pertinent provisions of the contracts relating to the definition of costs.

As previously pointed out, the key phrase in relation to contracts K–814 and K–825 is the provision providing that defendant will reimburse plaintiff for "amounts required by any federal, state or local taxes applicable to the Work, including old age benefit and unemployment taxes." Defendant insists that the phrase "applicable to the Work" specifically limits the type of tax included and urges that the nature of this specific tax necessarily excludes it from the defined classification. We find ourselves unable to subscribe to this contention. First, it must be pointed out that "work" is defined in the contract as follows: "The term 'Work' includes such labor, methods, material, equipment, and transportation or other facilities as may be necessary to complete the contract." Thus, the term "work" is by contractual definition a term broad in scope and meaning, connoting, we think, the entire performance of the construction contract. Therefore, "state taxes * * * applicable to the Work * * * " quite clearly seem to have been intended by the parties to mean any state tax which was required to be borne in connection with or as a result of the performance of the entire contract. Hence, as plaintiff was required to advance the costs, which upon reimbursement were subjected to taxation under the Indiana law, we conclude that the tax was directly attributable to and in fact, a part of the work, namely, the entire performance of the contracts. Consequently, we agree with the conclusion of the trial court not only with respect to contracts K–814 and 825, but that this was likewise the intention

of the parties under the "tax" clause of the extra work provision of contract K–851.

Mann v. Schnarr, 228 Ind. 654, 95 N.E.2d 138 is not determinative of the question, for, although the contract therein provided that the contractor would be paid on a cost plus 10% basis, nevertheless the contract was general in nature and did not specifically define costs. The court concluded, therefore, that the Indiana tax constituted an overhead charge rather than an operating cost. Obviously, such a holding can have no bearing whatever on the situation, as we have already shown that the parties, by the terms of their contracts, included the tax within the scope of operating costs.

■ The next problem with which we are confronted is whether certain acts of plaintiff constituted a waiver of its right to reimbursement for taxes paid. The trial court specifically found in its findings of fact "that plaintiff never withdrew or waived its claim against defendant for the payment of such taxes." Without detailing the course of events other than as previously set forth, from an examination of the entire record, we can not say that the finding of the district court on this point is clearly erroneous. In so holding we are mindful of the admonition of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Finally, it is contended that the court committed reversible error in admitting certain evidence. The most important question in this respect revolves around evidence pertaining to contracts, invoices and related documents which disclosed that in previous analogous jobs, handled through Sargent and Lundy, the construction contractor had been paid as part of its operating costs the Indiana Gross Income Tax assessed against it. However, it is significant that these were contracts to which defendant was not a party. Further, the court received in evidence plaintiff's profit and loss on the work done under the contracts in question as well as plaintiff's general overhead for the years 1948 through 1951.

■ As to the previous contracts in which plaintiff was paid the tax as part of its costs, we think that the court was in error in allowing such evidence to be introduced, as it had no probative value in interpreting the contractual terms here at issue. These matters were *res inter alias*. In Shell Petroleum Corp. v. Earnest, 97 Ind.App. 483, 485, 187 N.E. 211, in referring to testimony concerning related operations and terms of employment in determining the terms of employment then at issue, the court said: "They were in no way connected with or related to the issues or questions being litigated between appellant and appellee, or to any business transactions had between them." And, as was aptly stated in Huntington Post No. 7, etc. v. Arnold, 123 Ind.App. 160, 166, 109 N.E.2d 98, 101: "The fact that appellant made other contracts with other persons on a cost plus basis would not tend to prove that the contract with appellee was such as appellee asserts. It was appellant's privilege to make as many and as varied contracts as it could." See also, Wacker v. Essex, 67 Ind.App. 584, 119 N.E. 466.

■ However, it must be reemphasized that this cause was tried before the court and not by a jury. Consequently, on appeal, it is presumed that only competent evidence was considered as a basis for the conclusion of the court. Trinity Universal Insurance Co. v. Smithwick, 8 Cir., 222 F.2d 16; Freightways, Inc. v. Stafford, 8 Cir., 217 F.2d 831. Furthermore, as was succinctly stated in Builders Steel Co. v. C. I. R., 8 Cir., 179 F.2d 377, 379: "In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the compet-

ent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. Thompson v. Carley, 8 Cir., 140 F.2d 656, 660; Doering v. Buechler, 8 Cir., 146 F.2d 784, 786; Grandin Grain & Seed Co. v. United States, 8 Cir., 170 F.2d 425, 427." See also Wisconsin Hydro Elect. Co. v. Equitable Fire & M. Ins. Co., 8 Cir., 233 F.2d 313. As we have already concluded that there was sufficient competent evidence to sustain the decision of the trial court, we hold that no reversible error was committed.

The judgment is affirmed.