432 F.2d 213
 Mae CALDWELL, individually and on behalf of her minor son, Charles Caldwell, and all others similarly situated, Plaintiffs-Appellants,
v.
Donald CRAIGHEAD, as Band Instructor at Lebanon High School, et al., Defendants-Appellees.
 No. 19776.
 United States Court of Appeals, Sixth Circuit.
 September 25, 1970.
 
 COPYRIGHT MATERIAL OMITTED Reber F. Boult, Jr., Atlanta, Ga., for plaintiffs-appellants, Charles Morgan, Jr., Atlanta, Ga., on brief; Melvin L. Wulf, New York City, of counsel.
 Harlan Dodson, III, Nashville, Tenn., for defendants-appellees, John J. Hooker, Sr., Nashville, Tenn., Perry H. Johnson, Philip Reed, Lebanon, Tenn., on brief.
 Before EDWARDS and BROOKS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.
 BROOKS, Circuit Judge.
 
 
 1
 This case on appeal is styled as a class action. It purports to raise constitutional issues of free speech, racial discrimination and violation of the Establishment Clause of the Constitution of the United States. A synopsis of the events surrounding this litigation shows that there may well be involved constitutional questions of the magnitude alleged.
 
 
 2
 Appellant Charles Caldwell, a Negro, contends that his constitutional rights (numerous constitutionally guaranteed rights have been allegedly infringed) were violated when he was suspended from participating in high school band activities at Lebanon High School because he quit playing his instrument and left the gymnasium when the pep band he was in started playing "Dixie" at a pep rally. Appellant Mae Caldwell, Charles' mother, alleges she was discharged from her job as a teacher's aide at the high school in retaliation for the support she showed her son in his protest. Apparently she was standing at the entrance of the gymnasium, and when her son left she too walked out. Finally, both appellants challenge the constitutionality of certain Christian religious services conducted by the high school during regular school hours.
 
 
 3
 The District Court proceeded directly to the merits of the case and following trial held that: Charles Caldwell's expulsion from band activities was a legitimate disciplinary dismissal made pursuant to a valid band regulation; Mae Caldwell's services were "terminated due to her unsatisfactory work" and not as a result of her supporting her son's protest; and that appellants lacked standing to challenge the constitutionality of the school conducting religious services. (This issue was presented for the District Court's consideration in a supplemental amendment to the original complaint. It seems to have been added as an afterthought. Because of the District Court's decision that appellants lacked standing, the merits of the question were not reached.)
 
 
 4
 In considering this appeal, it must be first determined whether, in fact, this action is properly brought as a class action. The District Court did not determine whether the action should have been maintained as a class action and enter the order required by Rule 23(c) of the Federal Rules of Civil Procedure. Therefore, for the purposes of jurisdiction, procedural and substantive due process and to determine the binding effect of any judgment in this matter, it must be decided if this is a proper class action. There is some question as to the correct appellate procedure to be followed when there has not previously been made a determination of whether an action is maintainable as a class action. However, the importance of the notice requirements of Rule 23 and the effect a judgment will have on absent members of the so-called class makes it imperative that the propriety of maintaining a class action be examined. If this issue has not been considered before the action comes to a reviewing court, it would appear the better practice, for reasons of judicial economy, for the appellate court to make such a determination on the basis of the record before it, rather than remanding for a decision on this question.
 
 
 5
 Appellants' complaint states that they meet the prerequisites for maintaining a class action contained in Federal Rules of Civil Procedure 23(a) and 23(b) (1), (2) and (3). Thus, they have alleged the broadest possible type of class representation.[1] The class of individuals appellants purport to represent in this litigation are all the Negroes in the State of Tennessee. Furthermore, appellants have sought to bind by any determination in this matter not only the specifically named defendants but the class of "all public school band instructors, superintendent of schools, public high school principals, and boards of education and their members in the State of Tennessee."
 
 
 6
 To decide whether this action is maintainable as a class action, the character of the interests sought to be protected by the named parties in this action must be examined and compared with those interests allegedly held in common by the group of individuals the named parties seek to represent[2]. The gravamen of appellant Charles Caldwell's cause of action is denial of his First Amendment right to free speech.[3] Allegations are made throughout the complaint that Charles' dismissal resulted from and was a deliberate act of racial discrimination. A reading of the complaint and a study of the facts surrounding this litigation reveal that the incident out of which this dispute arose obviously had racial overtones. However, conduct amounting to racial discrimination and conduct which denotes racial hostility or prejudices are not identical in the eyes of the law. While prejudice and hostility based on race are moral wrongs, unless they take concrete shape in the form of an unfair or injurious distinction (discrimination), they are not legal wrongs. Mere allegations of racial discrimination without a basis in objective fact do not make out a cause for relief on these grounds. Charles Caldwell's complaint alleges and the thrust of his proof was designed to prove that he was disciplined for exercising his First Amendment right of free speech. He has not made out a case for the proposition that his disciplining was a result of racial discrimination. Similarly, Mrs. Caldwell's dismissal, while alleged to be a "retaliatory act of racial discrimination", a fair reading of her complaint indicates that if the allegations are true she was discharged for exercising her right to free speech by engaging in conduct expressing her support of Charles' protest.
 
 
 7
 The fact that these were Negroes who were allegedly exercising their freedom of speech on a subject having racial characteristics tends to blur the true nature of the high school officials' conduct drawn into question by this litigation. Stripping away all overtones of race involved here, which in and of themselves do not amount to racial discrimination, this controversy can be recognized for what it is — a dispute over alleged infringement of First Amendment rights.
 
 
 8
 This leads to the issue involved, that is, determining whether this action is properly maintainable as a class action. There is no doubt that if this were an action to remedy racial discrimination in education or employment practices, appellants could exert their rights to be free from injurious and arbitrary distinctions based on race through the class action device. See Whitmyer v. Lincoln Parish School Board, 75 F.Supp. 686 (D.C.1948) and Potts v. Flax, 313 F.2d 284 (5th Cir. 1963); Brunson v. Board of Trustees of School District No. 1 of Clarendon County, South Carolina, 311 F.2d 107 (4th Cir. 1962). In that type of case, appellants would be able to represent the class of all Negroes in the State of Tennessee who are similarly situated. However, here we have two plaintiffs attempting to enforce their individual rights in a form which makes them representative of a select segment of the population of a state, the Negro population, when the entire citizenry are equally guaranteed these rights. As an abstract and general proposition, these appellants have a guaranteed right or claim which is common and shared by all citizens of this country. However, on an individual and more concrete level, the rights appellants are attempting to enforce are separate and distinguishable from the broad and amorphous general right to free speech guaranteed to all citizens of the United States. In short, we hold that the rights appellants are allegedly attempting to enforce in this action are individual rights arising out of a unique fact situation, and the class action technique is not designed to be used in these types of cases.
 
 
 9
 These same observations apply with equal force to the defendants' so-called "class". Here the requirement that the defenses of the representative parties be typical of those of the class cannot be met. Nor can it be said that there are questions of law or fact common or shared by the named defendants, and the much larger class they are supposed to represent in this litigation. At best, appellants can only make defendants those individuals specifically named in the complaint.
 
 
 10
 The effect of this determination of this question is to deny the named plaintiffs and defendants any representative capacity for unnamed members of their so-called class. Thus, the parties in this litigation are reduced to two plaintiffs and ten defendants. Since eliminating the class action name given to this action does not necessarily result in loss of the federal jurisdiction, see Harris v. Palm Springs Alpine Estates, 329 F.2d 909 (9th Cir. 1964), an issue which might affect the power to render a decision in this matter must now be considered.
 
 
 11
 It appears that Charles Caldwell and his family have moved from Lebanon to Nashville, Tennessee. Charles is presently enrolled in a high school where "Dixie" is either not played or he is not required to play it. Having had these facts presented, it must be considered whether this conduct of one of the litigants, subsequent to initiation of this lawsuit, moots the action.
 
 
 12
 While Charles' complaint prays for declaratory and injunctive relief, it is clear that this does not affect the requirement that a federal court should not decide hypothetical or mooted questions. Aetna Life Insurance Company of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937); Watkins v. Chicago Housing Authority, 406 F.2d 1234 (7th Cir. 1969). The test of whether a controversy is moot involves several considerations. The absence or presence of any single factor is not necessarily determinative of whether a justiciable controversy exists. In United States v. Alaska Steamship Company, 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808 (1920), it is stated that a case becomes moot when "by an act of the parties, or a subsequent law, the existing controversy has come to an end * * *." and a court is not empowered "to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." In United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947), the constitutionality of the Hatch Act passed by Congress was drawn into question. On the question of mootness the Court observed that "[t]he power of courts * * * to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference." (Emphasis supplied). Finally, it is stated that a controversy is moot when a court cannot render an effective decree responsive to the complaint, Singleton v. Board of Commissioners of State Institutions, 356 F.2d 771 (5th Cir. 1966), because there is "no longer a subject matter on which the judgment * * * [can] operate." St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 911, 87 L.Ed. 1199 (1943).
 
 
 13
 Charles Caldwell is no longer a student in the Lebanon School system. His individual right to free speech which was allegedly infringed by the Lebanon High School officials can no longer be interfered with by these defendants. At best, an extremely remote chance exists that the high school officials' alleged wrongful conduct will be repeated and directed at Charles to deny him his right to free speech. See United States v. W. T. Grant Company, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). For all intents and purposes, the controversy between Charles Caldwell and certain named officials of the Lebanon School system has come to an end. Any decision or decree made as to these parties cannot now affect their relative positions. It would serve no purpose to order Charles to be reinstated in the band as he is no longer even a part of the school system. While a declaration of his rights might be undertaken, this would merely be a hypothetical ruling as between these parties, since Charles stood alone in this litigation and not as a representative of any class of individual. In addition, although this matter has generated public concern, the nature of the case itself, that is, a single individual alleging infringement of his right to free speech, does not make this dispute one of a "general public interest" requiring a decision even if many attributes of mootness exist. See United States v. W. T. Grant Company, supra at page 632, 73 S.Ct. 894. It is concluded, therefore, that Charles' claim raised in this action has been mooted and there is no need to reach the merits of his appeal.
 
 
 14
 While appellant Mae Caldwell also is no longer a part of the Lebanon High School system, she has prayed for monetary relief for lost wages resulting from her alleged wrongful discharge. Thus, her action is a viable cause of action and the merits of her appeal must be considered.
 
 
 15
 As previously discussed, Mrs. Caldwell's complaint contends that her dismissal from her position as a teacher's aide was a "retaliatory act of racial discrimination." It was alleged that her dismissal "violated her First Amendment right to freedom of expression, her rights guaranteed under the Ninth Amendment, the right not to have her son subjected to a badge or indicia of slavery as forbidden by the Thirteenth Amendment, and the right to due process and equal protection of the laws under the Fourteenth Amendment * * *."
 
 
 16
 Thus, a problem is presented of whether this dismissal was a result of 1.) racial discrimination, or 2.) because Mrs. Caldwell supported her son in his protest, or 3.) because she was incompetent as a teacher's aide, or 4.) a portion or all of the above. While the record is not completely devoid of racial implications in Mrs. Caldwell's dismissal, the District Court found that racial discrimination was not the cause of her being discharged. It is clear that she was hired for the teacher's aide job with full knowledge that she was a Negro and it seems somewhat illogical that she would be fired solely because she was a Negro.
 
 
 17
 Appellant's case is stronger for the proposition that she was discharged in retaliation for the support she showed her son in his protest. If this was the case it raises questions concerning the permissive scope of control an employer can exercise over an employee. That is, can an employer, as a prerequisite of employment, require that an employee refrain during actual work periods from certain conduct otherwise constitutionally protected and legitimate. While it would appear that there arises from the contractual relationship of employer-employee a right in the employer to place reasonable restrictions upon an employee's sphere of permissible conduct during actual work period, on the basis of the record in this case, it is not necessary to reach this broader question. The District Court found that Mrs. Caldwell's dismissal was prompted by the fact that she performed inadequately as a teacher's aide. There was testimony that she typed poorly, spent excessive time in the lounge area and took unduly long lunch breaks. In addition, there is evidence that her general attitude was poor, she adversely affected the morale of other employees, and that she refused to cooperate with several of the teachers. There had been serious discussions before the time of the "Dixie" incident about dismissing her because of her incompetency. The findings of the trial court on this issue, which are supported by credible evidence, are not clearly erroneous and indicate that the actual rationale behind Mrs. Caldwell's discharge was her failure to perform adequately at her job. Mrs. Caldwell argues that certain unsworn statements filed after the trial which reflected upon her qualifications and performance on the job should not have been considered by the District Court in making its decision since she was not given an opportunity to refute the accusations contained in them. This evidence, if considered by the District Judge, was incompetent, but we have already concluded there was substantial competent evidence properly before him to support his decision. This Court will not "reverse a trial court in a nonjury case for having admitted incompetent evidence, whether objected to or not, unless all of the competent evidence is insufficient to support the judgment appealed from or unless it affirmatively appears from the record that the incompetent evidence complained of was relied upon by the trial court and induced the court to make an essential finding which would not otherwise have been made." Thompson v. Carley, 140 F.2d 656, 660 (8th Cir. 1944); Builders Steel Company v. Commissioner of Internal Revenue, 179 F.2d 377, 379 (8th Cir. 1950); Herlihy Mid-Continent Company v. Northern Indiana Public Service Company, 245 F.2d 440, 444 (7th Cir. 1957), cert. denied, 355 U.S. 894, 78 S.Ct. 269, 2 L.Ed. 2d 192; Processteel Inc. v. Mosley Machinery Company, Inc., 421 F.2d 1074 (6th Cir. 1970).
 
 
 18
 The final issue to be considered is whether these appellants lacked standing to challenge the constitutionality of the Christian religious services conducted during regular school hours at the high school. Appellants' complaint alleges that in this cause of action they represent the same class of individuals (all the Negroes in the State of Tennessee) as in their first two causes of action. They also allege that defendants stand in the identical representative capacity as in the first two causes of action. Particularly with respect to this portion of litigation, appellants' contention that this is a class action is erroneous. There is no conceivable rationale why, in pressing this specific claim, appellants should only represent the Negroes in the State of Tennessee. Nor is there any basis in reasoned thought why the named defendants should represent all individuals similarly situated when there are no allegations that common facts or law link the named defendants with their so-called class. At best, appellants stand alone in this part of the litigation and challenge the actions of only certain named officials of the Lebanon School system as defendants.
 
 
 19
 On the issue of standing, the District Court ruled that since appellants did "not allege any personal injury, or the infringement of any personal right" they lacked the necessary standing to challenge the high school's conducting of religious services. Emphasis was also placed on the fact that attendance at the services was voluntary. We conclude the District Court erred in its ruling on the question of standing. It is alleged in the complaint that Charles is a student at the high school and Mrs. Caldwell is his mother. In challenging the constitutionality of these types of religious services, there is sufficient interest to sue if the parties are either students enrolled in the institution where the services are carried on or are parents of the students.[4] Sub silentio, School District of Abington Township, Pennsylvania v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). The fact that attendance at the services is voluntary does not affect appellants' standing to sue. Once it was argued that the voluntariness of attendance at the services would affect the constitutionality of the practice, but this has since been rejected by the Supreme Court. See Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962).
 
 
 20
 While appellants meet one aspect of justiciability, that is, standing to sue, it is concluded for the same reasons discussed with regard to Charles Caldwell's cause of action, that this Establishment Clause controversy between the named parties has been mooted as a result of appellants leaving the school system.
 
 
 21
 Affirmed in part, dismissed in part.
 
 APPENDIX
 PARTIES
 
 22
 The plaintiffs bring this action on their own behalf and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The prerequisites of subsections (a), (b) (1) and (b) (2) of that rule are satisfied. There are common questions of law and fact affecting the several rights of Negro children to participate in racially integrated public school activities and programs and to have members of their race serve in positions of public employment therein without racial discrimination. Additionally involved are the rights of Negro citizens to be not required to participate in racially discriminatory programs and ceremonies as a condition of participating in public school activities and programs and employment. The members of plaintiffs' class (the Negro citizens of Wilson County and Tennessee) and defendants' class (all public school band instructors, superintendents of schools, public high school principals, and boards of education and their members in the State of Tennessee) are so numerous as to make it impracticable to bring them all before this Court. The claims of the plaintiffs are typical of the claims of the class and the relief sought against all members of their class. A common relief is sought. The interests of the class are adequately represented by plaintiffs and defendants. The prosecution of separate actions by individual members of the class would create a risk of: (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class, or (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Furthermore, the parties opposing the class have acted and refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
 
 
 23
 Plaintiffs are Negro citizens of Wilson County, Tennessee, Mae Caldwell being over the age of 21 years. Plaintiff Charles Caldwell is 14 years of age and a freshman student at Lebanon High School. Until January 3, 1969, he was a member of four of the school's bands. Plaintiff Mae Caldwell was employed as a teacher's aide at Lebanon High School until January 31, 1969.
 
 
 24
 Numerous other Negroes are members of the school bands in racially integrated schools in the State of Tennessee and other Negroes are employed as teachers or teacher's aides therein.
 
 
 25
 Defendants are over the age of 21 years, reside in Wilson County, Tennessee and are members of the white race. Defendant Donald Craighead is the band instructor at Lebanon High School, and is sued in his official capacity, and as representative of that class consisting of all public school band instructors in Tennessee. Defendant Erwin Reed is Superintendent of Schools for Wilson County, Tennessee, and is sued in his official capacity, and as representative of that class consisting of all superintendents of schools in Tennessee. Defendant Barry Sutton is principal of Lebanon High School, and is sued in his official capacity, and as representative of that class consisting of all public high school principals in Tennessee. Defendants Kenneth Hackney, Dave Smith, Denver Bates, Pat Bryant, Claud Jennings, T. M. Dobson, and Carl Johnson are the members of defendant Board of Education of Wilson County, Tennessee, duly elected by the voters of Wilson County, Tennessee; they are sued in their official capacity as board members and they and defendant Board of Education are sued as representatives of that class consisting of all boards of education and their members in the State of Tennessee.
 
 EDWARDS, Circuit Judge (dissenting):
 
 26
 This is a civil rights case presenting five issues: It originated in the integrated Lebanon High School near Nashville, Tennessee. It was heard before the Nashville Division of the United States District Court for the Middle District of Tennessee. The District Judge found no constitutional violations on any issue and dismissed plaintiffs' complaints.
 
 
 27
 The two named plaintiffs are Charles Caldwell and his mother, Mrs. Marcus Caldwell. Charles in January of 1969 was a member of the high school band and a member of a subsidiary informal organization called the "Pep Band" which played at pep rallies before athletic events. At such a pep rally on January 3, the Pep Band played "Dixie." The key allegation in the complaint stated:
 
 
 28
 "(13) When the band played `Dixie' on January 3, 1969, the white students showed great excitement, as is usual when it is played at Lebanon High School and at other high schools in Tennessee. A group of approximately twelve to fifteen white students began shouting derogatory racial comments in unison, such as `Nigger, go back and pick that cotton.'"
 
 
 29
 Defendants' answer denied all racial connotations.
 
 
 30
 It is undisputed that Charles refused to play, stepped out of the band, and accompanied by his mother, left the auditorium. The record indicates that this became a major episode in the school, with students and faculty talking about both mother and son.
 
 
 31
 Charles was expelled from the band. Twenty-eight days after the "Dixie" episode Mrs. Caldwell's employment as a teacher-aide was terminated.
 
 
 32
 In March 1969 the Caldwells filed this action as a class action, seeking both injunctive relief, a declaratory judgment and, in Mrs. Caldwell's case, money damages for illegal discharge. The specific relief requested was reinstatement of Charles in the band, with a declaration that he did not need to play "Dixie" and restoration of Mrs. Caldwell's employment with backpay.
 
 
 33
 Defendants responded to these two issues by claiming that Charles Caldwell was expelled from the band for violating a nondiscriminatory rule (against leaving the band) and that Mrs. Caldwell was fired for inefficiency.
 
 
 34
 Additionally, after taking of depositions, plaintiffs amended their complaint by adding a count protesting religious instruction, which they claim was given during chapel services in the Lebanon High School during school hours in violation of the establishment clause of the First Amendment. The defendants responded to this portion of the complaint by admitting that there were ministers from time to time who spoke at the high school convocations and did lead prayer or preach on bible topics. The defendants stated that attendance at the chapel exercise was entirely voluntary and there had been no prior complaint about the content of the programs.
 
 
 35
 If these three issues were not sufficient, a fourth was added after the District Court hearing was concluded. (The only hearing conducted was a hearing on plaintiffs' motion for a temporary injunction.) Following that hearing and well before the District Judge's opinion and judgment were entered, defendants filed a 195-page exhibit consisting of unsworn statements by teachers and students about the Caldwells and the "Dixie" episode. It is conceded that appellants were not served with this material, nor informed that it had been filed, and learned about it only after the Judge's opinion and judgment had been released and upon inspection of the court file. But the document is a part of the case file as it has been forwarded to us. And appellees brief before the District Judge relied in part upon this "exhibit."
 
 
 36
 On May 7, 1969, the District Judge decided the case, holding that Charles had not been expelled from the band for refusing to play "Dixie" but had been expelled because he had violated a well-known and on its face nondiscriminatory rule that no one could walk out of the band without suffering the penalty of being denied readmission. He also held that Mrs. Caldwell's discharge was due to inefficiency in her work and the complaints which had been levied about her. He granted summary judgment in favor of the Defendants without taking detailed testimony or making findings of fact on the claim that the Lebanon High School chapel exercises offended the First Amendment provision against establishment of religion. In this regard he held that the Caldwells did not have standing to sue.
 
 
 37
 The fifth issue (upon which my brothers rely for disposition of most of the issues) was raised after appellate briefing and argument by appellants' motion to dismiss this appeal for mootness because the Caldwells have now moved to Nashville.
 
 
 38
 At the outset then we must determine whether the case is moot because the Caldwells and their son have now moved to Nashville and he has registered in another high school. To me it seems clear that the problems of this case are public issues of a continuing and recurring nature both in this high school and many others subject to recent integration orders. In the words of the Supreme Court, the
 
 
 39
 "controversy * * * remain[s] to be settled * * *. The defendant is free to return to his old ways. * * * [There is] a public interest in having the legality of the practices settled * * *. For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right * * *. The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement." United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L. Ed. 1303 (1953).
 
 
 40
 The fact that Charles may not be re-entering Lebanon High School does not terminate this court's jurisdiction over the protested application of the band exclusion rule. Carrol v. President & Com'rs of Princess Anne, 393 U.S. 175, 179, 89 S.Ct. 347, 21 L.Ed.2d 325 (1969); Division 1287 of Amalgamated Ass'n of St. Elec. Ry. and Motor Coach Employees of America v. Missouri, 374 U.S. 74, 83 S.Ct. 1657, 10 L.Ed.2d 763 (1963); Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L. Ed. 310 (1911). Nor do I think it ends the controversy over the chapel exercises. The band expulsion rule and the religious chapel exercises are "unresolved disputes." Division 1287 of Amalgamated Ass'n of St. Elec. Ry. and Motor Coach Employees of America v. Missouri, supra, at 78, 83 S.Ct. 1657. Of course Mrs. Caldwell's complaint alleging discriminatory discharge and claiming backpay cannot by any logic be considered moot.
 
 
 41
 Additionally, while I agree with much of the majority opinion analysis of the deficiencies of Plaintiffs' class action claims, I think that they should have been read, at a minimum, as stating a class action for all Negro students in the band at Lebanon High School.
 
 
 42
 In disposing of the basic issues I would deal first with the District Judge's grant of summary judgment on the establishment of religion complaint where he held Plaintiffs did not have standing to sue. This holding is not consistent with settled law involving the question of standing. A high school student and his parent have sufficient interest to raise the establishment issue; School Dist. of Abington Twp., Pa. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). See also Flast v. Cohen, 392 U.S. 83 (1968). In the Schempp case the Supreme Court held:
 
 
 43
 "The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain." 374 U.S. at 224 n. 9, 83 S.Ct. at 1572.
 
 
 44
 In view of the incomplete record on the establishment issue, summary judgment was inappropriate and the case should be reversed and remanded for trial on the standards of Schempp, supra.
 
 
 45
 I also believe that the District Court judgment should be reversed on the question of Mrs. Caldwell's discharge. On asserted First and Fourteenth Amendment issues such as these we are not allowed to accept the findings of the District Judge solely because we do not consider them "clearly erroneous" within the terms of Rule 52 Fed.R.Civ.P. We are required to make our own independent review of the entire record. Pennekamp v. Florida, 328 U.S. 331, 335, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); Edwards v. South Carolina, 372 U.S. 229, 235, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Jacobellis v. Ohio, 378 U.S. 184, 189, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).
 
 
 46
 The testimony of the school principal as contained in the record clearly shows that on the heels of the "Dixie" episode, the principal was concerned because teachers were threatening to quit because of Mrs. Caldwell's unrebuked participation in the "Dixie" episode. The principal had a conversation with Mrs. Caldwell in which he did rebuke her for participating in Charles' walkout. All this strongly suggests that Mrs. Caldwell was not dismissed because of work deficiencies alone but that in fact the "Dixie" incident was the triggering episode.
 
 
 47
 Over and above that, plaintiffs alleged and defendants concede that Mrs. Caldwell was the only Negro teacher or teacher-aide in the Lebanon High School, and that with her discharge, there were none.
 
 
 48
 In my judgment this record indicates that absent Mrs. Caldwell's public expressions of sympathy with her son's protest against playing "Dixie," she would have continued in her employment at least until the end of the school year. It seems clear to me that Mrs. Caldwell violated no school rules in her expressions of sympathy and that they were protected by the First Amendment. Pickering v. Board of Education, 391 U. S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 676, 17 L. Ed.2d 629 (1967). I would remand for the computation and entry of a backpay judgment for that period and for taking of proofs on any other damage claim related thereto.
 
 
 49
 The most difficult issue in this case is the one which gave birth to this litigation — Charles Caldwell's walkout on the playing of "Dixie" and his subsequent expulsion from the band. In my view a fair determination of the facts involved in this episode is a condition precedent to determining whether Charles' walkout was a constitutionally protected response to the racially inspired harassment alleged in the complaint or whether it was, as Defendants contend, simply an unwarranted violation of a nondiscriminatory rule nondiscriminatorily applied. The District Judge made no findings on the harassment claim. In addition the introduction of 195 pages of extra-judicial comment, much of it bearing on these very questions, seems to me to have so prejudiced the fairness of the hearing as to require vacation of this judgment and remand for new trial of these issues.
 
 
 50
 The guidelines for decision in that new hearing are set forth, at least in part in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). In Barnette the United States Supreme Court held that the state of West Virginia could not expel from its schools students who declined on grounds of conscience to salute and pledge allegiance to the American flag.
 
 
 51
 "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us.
 
 
 52
 "We think the action of the local authorities in compelling the flag salute and pledge transcends constitutional limitations on their power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control." 319 U.S. supra at 642, 63 S.Ct. at 1187.
 
 
 53
 If the First Amendment protects against state compulsion to pledge allegiance to our country's flag, it must also protect from state expulsion a student who on conscience grounds refuses to play a song which became the marching song of the one nearly successful attempt to overthrow the government of the United States by force and violence.
 
 
 54
 But, of course, as the District Judge and my colleagues point out, Charles Caldwell was expelled from the band not for refusing to play "Dixie" but for walking out. Thus before this court passes on his expulsion there should first be a factual resolution of whether, as charged by Plaintiffs and denied by Defendants, the playing of "Dixie" at Lebanon High School inspired and was accompanied by shouts of "Nigger, go back and pick that cotton."
 
 
 55
 It seems entirely possible to me that the state might be able to command Charles Caldwell to stand still while others played "Dixie" as a part of a normal music program whether he participated in playing it or not. But if in fact the attendant circumstances made the playing of "Dixie" at Lebanon High School a method of racial harassment, the U. S. Constitution would certainly protect his right peaceably to walk away from such an episode without being deprived of part of his education. In my judgment the equal protection clause of the Fourteenth Amendment commands no less than this. McLaurin v. Oklahoma State Regents for Higher Education, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149 (1949).
 
 
 56
 I would reverse and remand for further proceedings in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Rules 23(b) (1), (2) and (3) are phrased in the disjunctive. They roughly correspond to what was the true, hybrid and spurious class action under old Rule 23. See 3B Moore Federal Practice § 23.01 [11.1-11.4]. Under the old Rule, civil rights actions, especially racial desegregation suits, were often brought as either true, e. g. Whitmyer v. Lincoln Parish School, 75 F.Supp. 686 (D.C. 1948) or spurious class actions, e. g. Lopez v. Seccombe, 71 F.Supp. 769 (D.C. 1944). The Advisory Committee Notes suggest that under the new Rule, 23(b) (2) is the vehicle to be employed in civil rights cases. While there is nothing inherently wrong about appellants' alleging class representation under all three provisions of Rule 23(b), it is highly unlikely that such inclusive representation would, in fact, exist
 
 
 [2]
 We set out those portions of the complaint which purport to establish the appellants and appellees represent their respectively named classes in appendix to this opinion
 
 
 [3]
 That portion of the complaint setting out Charles Caldwell's cause of action alleges denial of rights protected by the First, Ninth, Thirteenth and Fourteenth Amendments of the Constitution
 
 
 [4]
 Appellants argue on this appeal that Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) supports their position on standing. However, there are no allegations in their complaint that they are taxpayers and thus they must and do rely on their status as student and parent to give them standing